FISHER-STEVENS, INC., APPELLANT-CROSS-RESPONDENT, v. DIRECTOR, DIVISION OF TAXATION, RESPONDENT-CROSS-APPELLANT.

MERIT MAILERS, INC., APPELLANT-CROSS-RESPONDENT, v. DIRECTOR, DIVISION OF TAXATION, RESPONDENT-CROSS-APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 6, 1972—Decided December 11, 1972.

514

Before Judges Lewis, Carton and Mintz.

*Mr. Joseph H. Sharlitt,* of the District of Columbia bar, admitted *pro hac vice,* argued the cause for appellants-cross-respondents (*Messrs. Apruzzese & McDermott,* attorneys).

*Mr. Harry Haushalter,* Deputy Attorney General, argued the cause for respondent-cross-appellant (*Mr. George F. Kugler, Jr.,* Attorney General of New Jersey, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel; *Messrs. Herbert K. Glickman and Harry Haushalter,* Deputy Attorneys General, on the brief).

The opinion of the court was delivered by

CARTON, J. A. D. This is an appeal from a judgment of the Division of Tax Appeals holding the New Jersey Sales and Use Tax, *N. J. S. A.* 54:32B–1 *et seq.,* applicable to a portion of the appellants' business, which involves activities commonly known as "direct mailing services."

Such services include the maintenance of mailing lists of members of various occupations such as physicians, attorneys, teachers, etc., and institutions such as hospitals and schools. Upon direction of its customers, appellants Fisher-Stevens, Inc. and Merit Mailers, Inc. utilize these mailing lists to prepare mailing labels in order to send advertising material, supplied by the customers, to the individual persons on the mailing lists. In addition to keeping their mailing lists current and preparing the mailing labels, appellants fold and insert into mailing envelopes the advertising material supplied by their customers. In accordance with postal regulations, they also sort the envelopes by geographic areas and bag and tie them before the envelopes are placed into the United States mail.

All of the direct mailing services performed by appellants which are involved in this case take place at New Jersey locations. At the hearing in the Division, Robert J. Atkins, president of Fisher-Stevens, estimated that approximately 45% of a typical billing charge is allocated to selecting a mailing list and printing and applying the mailing labels.

Approximately 30% is devoted to folding and inserting the advertising material into envelopes. The remaining 25% pertains to the sorting, typing and bagging of the envelopes.

Of the volume of mail processed by Fisher-Stevens, an estimated total of 96% is for delivery to addresses outside of New Jersey. About 85% of its business is on order of customers outside the State of New Jersey.

Warren Grover of Merit Mailers described his organization's business practices as substantially the same as those of Fisher-Stevens. Merit Mailers, however, sends only about 40% of its mailings out-of-state.

In 1970, the Sales and Use Tax Act was amended. A new section was added, applying the Sales and Use Tax to an additional service heretofore not taxed:

Sec. 3. * * * there shall be paid a tax of 5% upon:

*     *     *     *     *     *     *     *

(b) The receipts from every sale, except for resale, of the following services:

*     *     *     *     *     *     *     *

(5) Advertising services except advertising services for use directly and primarily for publication in newspapers and magazines * * *. [N. J. S. A. 54:32B-3(b)(5)]

The State Division of Taxation has maintained, since the passage of this amendment, that mailing services such as are performed by the appellants are subject to the cited portion of the act as "advertising services." By a letter of September 11, 1971 it gave Fisher-Stevens notice that this interpretation was final.

Fisher-Stevens and five other direct mailing organizations filed petitions of appeal with the Division of Tax Appeals, which, after a hearing, approved the agency's ruling except as to appellants' "sort-tie-bag" services on mail to out-of-state addresses. These services were held not liable to the tax.

## THE TAX STATUTE

■ The Division of Tax Appeals concluded that appellants' activities were subject to the tax as "advertising services" under section 3(b)(5) of the statute and as "processing" under section 3(b)(1). Appellants argue that their activities are neither advertising services nor processing.

Direct mailing services were clearly intended by the Legislature to be included in the term "advertising services." This is apparent from the legislative history of the amendment and the normal interpretation of the word "advertising."

■ Courts may freely refer to legislative and contemporaneous construction for whatever aid they may furnish in ascertaining the true intent of legislation. *N. J. Pharmaceutical Ass'n v. Furman,* 33 *N. J.* 121, 130 (1960).

On April 27, 1970 an amendment was introduced in the Senate version of the bill revising the Sales and Use Tax Act which specifically excepted direct mailers from the term "advertising services":

(5) Advertising services except advertising services for use directly and primarily for publication in newspapers and magazines, or when performed in connection with the addressing, inserting and mailing of direct mail advertising materials.

The failure of the Legislature to enact this version strongly indicates that direct mailing services were intended to be taxed, not, as the appellants would argue, that direct mailing is so clearly removed from advertising services that such an exception was considered unnecessary.[1]

---

[1] The Assembly Committee on Taxation held a public hearing on January 28, 1970 to consider the proposed amendments to the sales tax statute, at which John J. Owens, executive vice-president of Clark-O-Neill, Inc., a New Jersey direct mailing company, testified. Owens, who was accompanied by other representatives of the New Jersey direct mailing industry, including Robert Atkins of Fisher-Stevens, appeared in the capacity of principal spokesman for his

In support of their argument that "advertising services" does not apply to their operations, appellants also note the deletion in 1970 of former section 8(v) of the Sales and Use Tax Act:

Sales * * * of catalogs, sales price lists, point of purchase advertising, sales pamphlets or handbills, commonly known as commercial advertising, when produced upon special order of the purchaser.

They argue that the addition of "advertising services" in the same legislation was meant to replace exactly this list of formerly exempted services and not any more. This argument is frivolous. These exemptions apply only to "the tax on retail sales imposed under subsection (a) of section 3." *N. J. S. A.* 54:32B-8. Section 3(a) applies to sales of tangible personal *property,* all of which, except for the enumerated categories, is taxable. Direct mailers are subject to the tax under section 3(b), which enumerates certain *services* to which the statute applies.

*Websters Third New International Dictionary* (Unabridged 1966) defines advertising as "the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public esp. by means of printed or broadcast paid announcements." Under this definition appellants' activities would qualify as advertising services. They are intimately involved in "calling something to the attention of the public," whether it be a product for sale or civil defense regulations. The term "advertising services"

industry. Owens' testimony clearly indicates that it was his belief, and thus that of the industry which he was representing, that the direct mailing industry was providing an advertising service and would thereby be subject to the tax by the enactment of *N. J. S. A.* 54:32B-3(b)(5). Owens' purpose in testifying before the committee was to point out the hardship the amendment would cause to his industry by putting the New Jersey direct mailers at a competitive disadvantage in relation to the mailers of neighboring states. Of course, appellants' previous activities in seeking to be specifically exempted from *N. J. S. A.* 54:32B-3(b)(5) do not preclude them from now arguing that they are not advertising services, but it does strongly indicate that the plain meaning of the term includes direct mailers.

should not be limited to the creative services provided by advertising agencies and consultants. Dissemination is as essential as creation in advertising. The direct mailers, not unsurprisingly, work closely with the advertising agencies. The president of Fisher-Stevens testified that 10 to 20% of his firm's business was done on order of such agencies.

Although the point was not argued or briefed in the court below, it found direct mailing services to be taxable under section 3(b)(1) of the statute, which includes the "processing" of tangible personal property. This holding was superfluous since appellants' business was held to be taxable because it involved "advertising services."

The Director of the Division of Taxation, pursuant to statutory authorization (*N. J. S. A.* 54:32B–24(1)), has promulgated a regulation elaborating upon the meaning of the term "processing." The regulation reads as follows:

Manufacturing or processing — means the performance of an operation or series of operations, the object of which is to place the items of tangible personal property in a form, composition or character different from that in which it was acquired. The change in form, composition or character must be a substantial change and it must result in a transformation of property into a different or substantially more usable product. [*N. J. A. C.* 18:24–25(b)(1)].

The item of personal property here is the brochure or flyer given by the advertiser to the direct mailing company. That item is then folded, placed in an envelope, addressed, sealed, sorted, bagged and mailed. This operation does not appear to represent a substantial change in form, composition, or character. Nor does it appear to transform the property into a different or substantially more usable product. Flyers and brochures do not have to be mailed; they can be handed out. The Division of Tax Appeals' interpretation of "processing" is therefore of doubtful validity as an additional basis for application of the tax. We note that it is also apparently inconsistent with the agency's informal determinations rendered prior to 1970 holding that "addressing services" were not subject to the tax.

## THE POSTAL POWER

■ Appellants next argue that because the Postal Rate Commission, when establishing postal rates, must take into account "the degree of preparation of mail for delivery into the postal system performed by the mailer and its effect upon reducing costs to the Postal Service," *U. S. C. A.* 39 § 3622(b)(6), the imposition of the state sales tax on their services constitutes a direct interference with an exclusively Federal Government function.

One inevitable effect of the imposition of the sales tax upon the appellants' services will be to increase their cost to their customers. Along with a multitude of other economic factors, this may have an effect on the use of the U. S. mails for commercial purposes and thereby affect postal rates.

Where, however, the effect of state taxation on the cost of postal service is remote, the United States Supreme Court has held that the state tax is not invalid. In *Alward v. Johnson*, 282 *U. S.* 509, 51 S. Ct. 273, 75 L. Ed. 496 (1930), the court upheld a California tax on gross receipts of a trucking company despite the fact that the company carried mail under contract with the Federal Government.

In *Oklahoma Tax Comm'n v. Texas Co.*, 336 *U. S.* 342, 69 S. Ct. 561, 93 L. Ed. 721 (1948), the court reviewed the problem of state taxation of business organizations involved with Federal Government activity generally. Citing *Alward*, it rejected a claim of immunity in the following language:

> But, so far as concerns private persons claiming immunity for their ordinary business operations (even though in connection with governmental activities), no implied constitutional immunity can rest on the merely hypothetical interferences with governmental functions here asserted to sustain exemption. [at 365, 69 S. Ct. at 573]

Appellants are not instrumentalities of the Federal Government. They neither deliver the mail nor perform any service the post office would otherwise have to perform. Appellants' services are not mandatory upon mail advertisers.

Their customers could address, fold, sort-tie-bag and mail their own advertisements and, in fact, would escape the sales tax by doing so. Indeed, appellants' relation to the Federal Government is more remote than the trucking company in the *Alward* case and a decline in the volume of their business would only hypothetically interfere with the postal service.

## INTERSTATE COMMERCE

The court below concluded that appellants' sort-tie-bag operations in compliance with postal service regulations for out-of-state mail were not taxable by the State because "the imposition of a use [sic] tax on their service is so directly connected to an act of interstate commerce, as to be burdensome." On the other hand, the court below found their folding and inserting operations to be intrastate in nature and taxable. The appellants challenge this determination on the basis that *all* their operations should be tax exempt as interstate commerce; the state agency cross-appeals on the basis that, despite the involvement in interstate commerce, all appellants' services should nevertheless be taxable.

Involvement in interstate commerce is not enough to relieve a business from its just share of the state tax burden. The United States Supreme Court, in a recent examination of the effect of state taxation on interstate commerce, said:

[i]t was not the purpose of the commerce clause to relieve those engaged in interstate commerce from their just share of state tax burden even though it increases the cost of doing the business. * * * Even interstate business must pay its way, * * * as is evidenced by numerous opinions of this Court. [*General Motors Corp. v. Washington*, 377 U. S. 436, 439, 84 S. Ct. 1564, 1567, 12 L. Ed. 2d 430 (1964)]

However, to avoid inhibition of interstate commerce the court has held invalid state taxes that expose the business to the possibility of multiple burdens, *i. e.,* double taxation of the same income, property, etc. *General Motors Corp. v. Washington, supra,* at 440, 84 S. Ct. 1564.

Appellants' activities here are not subject to multiple taxation. The record shows that their operations take place entirely within the borders of this State. No other state could justifiably tax the sale of their direct mailing services. Appellants contend to the contrary that states in which the mailed advertising material is received could impose a use tax on such flyers or brochures, but this argument misconceives the nature of the sale with their customers. The direct mailers are not selling a product which is transported across state lines and whose use can later be taxed; they are selling a service which is entirely performed within the State. The "service" does not go through the mails.

A case cited by the Division of Taxation appears particularly cogent here. In *Federal Compress & Warehouse Co. v. McLean,* 291 *U. S.* 17, 54 S. Ct. 267, 78 L. Ed. 622 (1934), the court affirmed the validity of a Mississippi tax levied on the operation of a cotton compress. This was an activity prerequisite to the shipping of the cotton through interstate commerce. The court, recognizing this factor, stated that:

> Most articles, before their shipment in interstate commerce, have had work done upon them which adapts them to the needs of commerce and prepares them for safe and convenient transportation, but that fact has never been thought to immunize from local taxation either the articles themselves or those who have manufactured or otherwise prepared them for interstate transportation. [at 21, 54 S. Ct. at 269]

## EQUAL PROTECTION

Finally, appellants argue that taxing direct mailing services but not "advertising services for use directly and primarily for publication in newspapers and magazines," *N. J. S. A.* 54:32B–3(b)(5), or users of billboard space or broadcasting air time, is an unreasonable legislative classification and thereby contravenes the Fourteenth Amendment's equal protection clause.

■ ■ The State's power to make a classification such as the one in question is undoubted. State legislatures, in matters of taxation or exemption therefrom, may make distinctions of degree having a rational basis, and when subjected to judicial scrutiny they must be presumed to rest on that basis if there is any conceivable state of facts which would support it. *Carmichael v. Southern Coal and Coke Co.*, 301 *U. S.* 495, 57 S. Ct. 868, 81 L. Ed. 1245 (1936); *Schwartz v. Essex County Board of Taxation*, 129 *N. J. L.* 129, 132–133 (Sup. Ct. 1942), aff'd 130 *N. J. L.* 177 (E. & A. 1943). The fact that appellants compete with those furnishing advertising services in newspapers and magazines does not preclude the State from exempting the latter from the sales tax. *Louis K. Liggett Co. v. Lee*, 288 *U. S.* 517, 53 S. Ct. 481, 77 L. Ed. 929 (1934).

The exemption to services provided for newspapers and magazines was clearly to favor those media. Newspapers and magazines perform a public service by informing the public on current events and analyzing those events in a manner not possible through other media. The Legislature is justified in not wishing to subject this service to the additional burdens of this tax.

In other jurisdictions where the issue of favoring newspapers and magazines for tax purposes has been questioned on equal protection grounds, the courts have consistently upheld the validity of such legislation. See *Business Statistics Organization, Inc. v. Joseph*, 299 *N. Y.* 443, 87 *N. E.* 2d 505 (Ct. App. 1949); *Giragi v. Moore*, 49 *Ariz.* 74, 64 *P.* 2d 819, 110 *A. L. R.* 320 (Sup. Ct. 1937), app. dism. 301 *U. S.* 670, 57 S. Ct. 946, 81 L. Ed. 1334 (1937); *Long v. Poulos*, 234 *Ala.* 149, 174 *So.* 230 (Sup. Ct. 1937); *In re Assessment of Sales Tax Against Knapp*, 185 *Okl.* 584, 95 *P.* 2d 92 (Sup. Ct. 1939).

Further support for the validity of a classification favoring newspapers and magazines over advertising can be found in the postal rate structure. Newspapers and magazines are sent as second-class mail under the most favorable rates. Most

advertising flyers go third-class, which is less favorable. Such material is specifically excluded from second-class. 39 *U. S. C. A.* § 4354. The Supreme Court in *Lewis Publishing Co. v. Morgan,* 229 *U. S.* 288, 33 S. Ct. 867, 57 L. Ed. 1190 (1912), affirmed the constitutionality of this preference.

Appellants also contend that direct mailers will suffer tax burdens not imposed upon users of billboard space and radio and television air time. The Sales Tax Bureau, in a notice of revisions to the tax issued soon after the 1970 amendments, stated that the tax did not apply to such advertising space or air time. Appellants' argument again misconceives the direct mailers' role in the advertising scheme. The exemption for communication is equivalent to the one for transportation. Admittedly, billboard space and broadcasting time are not taxable under the Sales and Use Tax Act, but advertising services in connection with the two are. The actual transportation of advertising flyers is not taxable, but the appellants' service in preparation for it is.

We hold that all sales of appellants' direct mailing services performed in this State, including the sort-tie-bag services on mail to out-of-state addresses, are subject to the Sales and Use Tax. *N. J. S. A.* 54:32B–1 *et seq.*

The judgment of the Division of Tax Appeals is affirmed as modified.