## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

### JEFFERSON PUBLISHING CORPORATION V. WILLIAM H. FORST, STATE TAX COMMISSIONER.

April 22, 1977.

Record No. 760533.

Present, All the Justices.

*Jack N. Kegley*, for plaintiff in error.

*Terrence A. Emerson, Assistant Attorney General (Andrew P. Miller, Attorney General,* on brief), for defendant in error.

COMPTON, J., delivered the opinion of the court.

In July 1974, appellant-taxpayer Jefferson Publishing Corporation filed in the trial court an application for tax relief, Code § 58-1130, against appellee William H. Forst, State Tax Commissioner, seeking a refund of $214.41, paid as the result of an allegedly erroneous assessment of sales tax for the period February 13, 1974 to April 30, 1974. After a hearing, the trial court denied the request for relief and dismissed the application in a February 1976 final order, to which we granted taxpayer a writ of error.

The evidence presented during the hearing below is summarized on appeal in an agreed statement of facts. During the period in question, the taxpayer, as its sole business, published weekly from its Charlottesville office a printed booklet containing about 28 pages entitled "THIS WEEK In Jefferson's

Country & The Shenandoah Valley". This Week was intended mainly to inform tourists, visitors, and newcomers to the area of dining and entertainment facilities. Approximately 60% of the contents of the booklet was used for "editorial purposes", *i.e.*, comments on sightseeing attractions and information about church services, athletic events, civic organizations, shopping opportunities and lodging. The balance of This Week was devoted to advertisements. The "editorial" content included no recommendation for commercial businesses which were non-advertisers, but not all advertisers were recommended editorially.

The taxpayer had no printing facilities of its own. The weekly printing was done, under contract, by Eubank Printing Company of Lynchburg. During the period in question, 3000 copies of each issue of This Week were printed by Eubank. Aside from ten paid subscribers at $9.00 per year and occasional sales (once or twice per month) at ten cents per copy, the taxpayer's only revenue was from advertising.

During the period, 2330 copies were "given away" weekly by the taxpayer to the advertisers and 660 copies were distributed without charge to "non-commercial places", specifically, the University of Virginia, Madison College, Eastern Mennonite College, Washington & Lee University, the Chambers of Commerce of Waynesboro, Staunton, Harrisonburg, and Charlottesville, and to the Albemarle County Governmental Office Building. Except for the "non-commercial" distribution, all copies were delivered to advertisers and no copies were circulated to non-advertisers. The advertisers, in turn, distributed the booklets to their customers and guests.

This controversy arose as the result of the Tax Commissioner's action in assessing and collecting a sales tax upon the transaction between the printer and publisher-taxpayer. The tax was levied on the cost of printing charged by the printer to the publisher, to the extent that such cost was attributable to copies of This Week which were subsequently distributed by the publisher without charge and not resold by it. The transaction was taxed as a sale of "custom printing," within the meaning of § 1-86, *infra,* Virginia Retail Sales and Use Tax Rules and Regulations (the Regulations), promulgated in 1966 by the Commissioner. Under the authority of Code § 58-441.41, a part of the Virginia Retail Sales and Use Tax Act (the Act), Code

§§ 58-441.1 to 58-441.52, the Commissioner is given the power to make and publish reasonable rules and regulations for the enforcement of the provisions of the Act.

Section 1-86 of the Regulations deals with "Printing"; it classifies the printing business in Virginia as a manufacturing business for purposes of the Act. "Custom printing", under the Regulation means:

"the production or fabrication of printed matter, in accordance with a customer's order or copy, for the customer's use or consumption."

Section 1-86 further provides that:

"The sale of custom printing is the sale of tangible personal property and is subject to the tax imposed by the Act on the total invoice charge made on the transaction."

Upon being assessed with a sales tax based on the total invoice charge for the printing work done for it by the printer during the period in question, to the extent such charge was due to copies of This Week distributed free of charge, the taxpayer objected. It took the position then, and argues now, that it was not liable for the tax under Code § 58-441.6(k) which exempts:

"Any publication issued daily, or regularly at average intervals not exceeding three months, except that newsstand sales of the same are taxable."

The issue to be decided, therefore, is whether a publisher, which has no printing facilities of its own but subcontracts the printing to another company, is entitled to an exemption, under subsection (k), from sales tax computed on the total invoice charge made by the printer to the publisher for the printed matter which is eventually distributed by the publisher to others without charge.

Code § 58-441.4 imposes a tax on persons engaged in the business of *selling* tangible personal property at retail. Code § 58-441.2(c) defines "retail sale" or a "sale at retail" as a sale to a consumer or to any person for any purpose other than for resale. Code § 58-441.5 imposes a tax on the *use* or consumption of tangible personal property in this State, but the use tax is applicable under subsection (d) of § 58-441.5 only with respect to

such property the sale of which has not been taxed under § 58-441.4.

Contending the Commissioner "exceeded his statutory authority in taxing a publication which the legislature has exempted from taxation", the taxpayer argues "that § 58-441.4 and § 58-441.5 define the taxable events by imposing the tax on the sale, use or consumption of any tangible personal property, but that § 58-441.6 [(k)] specifically excludes from those very same definitions 'any publication', except for newsstand sales." The taxpayer further contends that if the General Assembly had intended or desired additional "qualifications to the exemption based upon the . . . method of printing, or the manner of sales or distribution, or the source or revenue, . . . or any other criteria," it would have so provided in the exemption and not used the "broadest possible" language — "any publication" — "with the only restriction being that it be issued regularly, and at the same time providing that newsstand sales are not exempt.

The Commissioner, on the other hand, focusing on the meaning of "publication" as used in (k), argues the exemption speaks to a transaction between the publisher and its reading public, which is not the transaction with which we are here concerned. Rather, the Commissioner says, the taxable event at issue in this case is the transaction between the printer and publisher involving the sale of printing. This transaction is not covered by (k), he argues, but is controlled by Code § 58-441.4, as interpreted by Regulation 1-86, because the transaction is a sale of tangible personal property not for resale, that is, "custom printing," and hence is taxable. We agree with the Commissioner and affirm.

We follow the rule of strict statutory construction in all cases involving Code § 58-441.6. "Taxation is the rule and not the exception; statutory tax exemptions are construed strictly against the taxpayer; and, when a tax statute is susceptible to alternative constructions, one granting an exemption and the other denying it, the latter construction will be adopted. Moreover, we must remember that construction of a statute by a State official charged with its administration is entitled to great weight. [Citations omitted]." *Winchester TV Cable Company* v. *State Tax Commissioner*, 216 Va. 286, 290, 217 S.E.2d 885, 889 (1975).

We think the interpretation placed on subsection (k) by the

Commissioner is the proper one. At the core of the case is the meaning of the term "publication," as used in the exception; also vital to a determination of the issue is that "printing" is not synonymous with "publishing."

The exemption deals with "[a]ny publication issued." In this context, "publication" is used as a noun and means a newspaper, magazine or other periodical which is available for general distribution to the public. It does not mean "printing," which is reproduction of an image from a prepared surface, usually made by contact impression that causes a transfer of ink. Webster's Third New International Dictionary 1803 (1971). Thus, in the case of a periodical which may be *printed* by one person and *published* by another, two potentially taxable events occur. First, there is a bulk transfer, for a consideration, of the printed matter from the printer to the publisher; and, second, there is a subsequent sale of the periodical to members of the public. The first transaction is not the sale of a *publication* because, at the time of the transfer, the periodical has not been published; it has not been made available to the general public. A publisher may decide not to circulate printed matter; a periodical may be printed but never published. Consequently, the first taxable event under these circumstances is a sale of *printed matter*, to which Regulation 1-86 speaks. The statutory exemption bears upon the second transaction, as we have said, and exempts non-newsstand sales.

This case involves only the first transaction. Here, the first transfer, to the extent taxed, was for the taxpayer's own "use and consumption," in the language of the Regulation, *supra*, defining "custom printing." The taxpayer, in an obvious and legitimate effort to generate advertising customers, distributed weekly, without charge, 2990 copies of the booklet. Such a business practice, of course, would likely produce advertising revenue for the taxpayer. Hence, the "custom printing" was produced for the customer-taxpayer's own use and consumption and the transaction was taxable as the sale of tangible personal property not for resale. As the Commissioner has conceded, however, if the booklet had been resold by the taxpayer, rather than given away, the sales tax, if applicable, would not be paid by this taxpayer but by the purchasers of the booklet. Code § 58-441.2(c), *supra*.*

---

\* The taxpayer does not contend, nor do the agreed facts demonstrate, that the weekly

 ██

For these reasons, we hold the trial court was correct in denying taxpayer's request for tax relief. Accordingly, the final order entered below dismissing the application will be

*Affirmed.*

distribution of the 2990 booklets, or any portion thereof, was made as part of the consideration for the contract of advertising. Thus, we do not have the question whether such a transaction between a printer and a publisher-taxpayer may be exempt as a sale for resale.