ANDREW, J. T. C.
This is an appeal from a determination of the Director of the Division of Taxation that plaintiffs Del Val Pennysaver, Inc. (“Del Val”) and Custom Printing, Inc. (“Custom Printing”) are liable for sales taxes imposed on printing expenses incurred by Del Val during the period from July 1,1974 to June 30,1976. A total of $15,819.65 in taxes, interest and penalties has been paid, and Del Val seeks a refund of that amount.[1]
Del Val’s sole business is the publication of the Del Val Pennysaver (“Pennysaver”), a printed booklet published weekly that is distributed free to the public. It consists mainly of advertising, and is utilized primarily by small, local businesses interested in low-cost advertising and in reaching a local market. The Pennysaver also contains classified advertising and a one-page feature entitled “Town Talk” which contains news of local events and services. The Pennysavers printed during the relevant period ranged from 24 to 48 pages in length. Most editions contained either 32 or 40 pages.
There are ten editions of the Pennysaver, each serving and distributed in a particular geographical area. All editions are identical in format. The combined weekly circulation of all ten editions is approximately 120,000, making the Pennysaver one of the largest circulation publications in Burlington and Camden Counties, New Jersey, the areas of its distribution.
Beginning in 1972 and continuing through the assessment period, Del Val retained Custom Printing to do all the printing work involved in the production of the Pennysavers. Prior to the assessment at issue herein, Del Val never paid nor was it *167 advised or requested to pay any sales tax on its purchases from any of the printers it utilized. As a result, Del Val never considered its sale tax liability when structuring its advertising rates. Only labor, printing and circulation costs were considered.
The assessment was imposed pursuant to the New Jersey Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq., which imposes a sales tax of 5% upon the receipts from sales of tangible personal property and various services. This assessment was based upon N.J.S.A. 54:32B-3(a), which authorizes a sales tax upon “the receipts from every retail sale of tangible personal property, except as otherwise provided in this act.” “Retail sale” is defined in pertinent part as “a sale of tangible personal property to any person for any purpose, other than (A) for resale either as such or as converted into or as a component part of a product produced for sale by the purchaser .... ” N.J.S.A. 54:32B-2(e). A stipulation of the parties contained in the pretrial order provides that the subject of the sale from Custom Printing to Del Val constitutes tangible personal property within the meaning of the statute.
Del Val asserts several grounds in support of its contention that the assessment is improper. Three of these stem from the Sales and Use Tax Act. The act exempts from the sales tax imposed by N.J.S.A. 54:32B~3(a) the receipts from certain sales, among them “sales of newspapers, magazines and periodicals.” N.J.S.A. 54:32B-8(e). Del Val maintains that the Pennysaver is a newspaper; that a newspaper is the subject of the sale between Custom Printing and Del Val, and that therefore the transaction comes within the above exemption. Secondly, Del Val argues that the sale falls within N.J.S.A. 54:32B-8(ee), which exempts from sales tax “the sale of advertising to be published in a newspaper.”[2] Third, Del Val asserts that the *168 free distribution of the Pennysaver to its readers constitutes a resale and thus the transaction between Custom Printing and Del Val is a sale for resale and not subject to tax. N.J.S.A. 54:32B-3(a), -2(e)(1).
In addition to the statutory arguments, Del Val asserts that application of the sales tax to it constitutes a denial of equal protection, due process and freedom of the press, in violation of the First, Fifth and Fourteenth Amendments to the United States Constitution and Art. 1, par. 2, of the Constitution of the State of New Jersey. Finally, Del Val contends that the sales tax assessment, if proper, should have a prospective application only.
Del Val presented only one witness at the trial. James Tressito, president of Del Val Pennysaver, Inc., gave testimony describing the Pennysaver and the working of the corporation. His testimony was directed primarily to the question of whether the Pennysaver qualifies as a newspaper within the meaning of the statute. There was no cross-examination of Tressito and no witnesses were presented by defendant. The brevity of the trial reflected the opinion of counsel that the matter primarily involves questions of law.
Del Val’s first argument is that it is exempt from sales tax pursuant to N.J.S.A. 54:32B-8(e), which exempts sales of newspapers, magazines and periodicals. The parties thoroughly briefed the question of whether the Pennysaver possesses the characteristics of a newspaper. Resolution of that question, however, is unnecessary. The subject of this assessment is the property which was transferred by Custom Printing, the printer, to Del Val, the publisher. If the Pennysaver is a newspaper, it is a newspaper in the contemplation of the statute only when it passes from publisher to reader. The essence of the transaction *169 between printer and publisher is not the sale of a newspaper which the Legislature intended to exempt from sales tax, even though the product transferred is identical in form when it passes between printer and publisher as when it passes from publisher to reader.
The clear intention of the Legislature in enacting the newspaper exemption was to spare the reading public the burden of a sales tax. In Fisher-Stevens, Inc. v. Taxation Div. Director, 121 N.J.Super. 513, 298 A.2d 77, certif. den. 62 N.J. 575, 303 A.2d 328 (1973), the court, in considering the sales tax exemption for advertising services used in newspapers and magazines, N.J.S.A. 54:32B-3(b)(5), explained the legislative intent as follows:
The exemption to services provided for newspapers and magazines was clearly to favor those media. Newspapers and magazines perform a public service by informing the public on current events and analyzing those events in a manner not possible through other media. The Legislature is justified in not wishing to subject this service to the additional burdens of this tax. [121 N.J.Super. at 523, 298 A.2d 77]
This legislative goal is furthered only by a sales tax exemption on the sale of newspapers between publisher and reader, which N.J.S.A. 54:32B-8(e) implements, not by an exemption on the receipts from purchases between printer and publisher.
This concept was well explained by the Supreme Court of Virginia in Jefferson Pub. Co. v. Forst, 217 Va. 988, 234 S.E.2d 297 (1977). In that case taxpayer, Jefferson Publishing Company, sought a refund of sales taxes assessed by the state tax commissioner. Taxpayer’s sole business was the weekly publication of a printed booklet of about 28 pages containing information of dining and entertainment facilities intended mainly for tourists and visitors to the Shenandoah Valley area. Approximately 60% of the booklet was devoted to comments on area attractions, services, shopping and lodging. The balance was devoted to advertisements.
The printing of the booklet was performed by an independent printer pursuant to contract with taxpayer. Three thousand copies were printed each week, and apart from ten paid subscriptions at $9 a year and one or two sales a month at ten cents a copy, all were distributed free of charge. The taxpayer’s only other revenue was from advertising.
*170 The tax commissioner assessed and collected a sales tax upon the transaction between the printer and publisher-taxpayer. The tax was levied on the cost of printing charged to the publisher to the extent that such cost was attributable to copies of the booklet given away free. The authorizing regulation, No. 1-86; provided: “The sale of custom printing is the sale of tangible personal property and is subject to the tax imposed by the Act on the total invoice charge made on the transaction.” The taxpayer took the position that its purchases came within a statute that exempted from sales tax “any publication issued daily, or regularly at average intervals not exceeding three months, except that newsstand sales of the same are taxable.” The tax commissioner contended that the exemption spoke to a transaction between the publisher and its reading public, which was not the transaction at issue. Rather, the commissioner said, the taxable event at issue was the transaction between the printer and publisher involving the sale of printing, and that constituted a sale of tangible personal property not for resale and taxable under the statutes and regulations. The court agreed, reasoning as follows:
At the core of the case is the meaning of the term “publication,” as used in the exception; also vital to a determination of the issue is that “printing” is not synonymous with “publishing.”
The exemption deals with “[a]ny publication issued.” In this context, “publication” is used as a noun and means a newspaper, magazine or other periodical which is available for general distribution to the public. It does not mean “printing,” which is reproduction of an image from a prepared surface, usually made by contact impression that causes a transfer of ink. Webster’s Third New International Dictionary 1803 (1971). Thus, in the case of a periodical which may be printed by one person and published by another, two potentially taxable events occur. First, there is a bulk transfer, for a consideration, of the printed matter from the printer to the publisher; and, second, there is a subsequent sale of the periodical to members of the public. The first transaction is not the sale of a publication because, at the time of the transfer, the periodical has not been published; it has not been made available to the general public. A publisher may decide not to circulate printed matter; a periodical may be printed but never published. Consequently, the first taxable event under these circumstances is a sale of printed matter, to which Regulation 1-86 speaks. The statutory exemption bears upon the second transaction.... [at 992, 234 S.E.2d at 300; emphasis in original].
The court concluded that the case involved only the first transaction in the printer-publisher-reader chain. The receipts of the *171 transaction were held taxable as resulting from a sale of tangible personal property not for resale.[3]
The reasoning of the Virginia Supreme Court applies with equal force here. The exempt transaction contemplated by N.J.S.A. 54:32B-8(e) is that between publisher and reader and not that between printer and publisher.[4] Thus, even if Penny-saver is a newspaper, the transaction between Custom Printing and Del Val does not constitute the sale of a newspaper within the meaning of N.J.S.A. 54:32B-8(e) and Del Val is not entitled to the exemption afforded by that statute.
Plaintiffs next argue that the event taxed by the Director constitutes the sale of advertising to be published in a newspaper and is exempt pursuant to N.J.S.A. 54:32B 8(ee). Here again, plaintiffs apply an exemption statute to a transaction different from that intended by the Legislature.
Plaintiffs cite Fisher-Stevens, Inc. v. Taxation Div. Director, supra, in which the following definition of “advertising” was approved: “the action of calling something (as a commodity for sale, a service offered or desired) to the attention of the public especially by means of printed or broadcast paid announcements.” Webster’s Third New International Dictionary (unabridged 1966). The court also stated that the term “advertising services,” as used in N.J.S.A. 54:32B.....3(b)(5), “should not be limited to the creative services provided by advertising agencies and consultants. Dissemination is as essential as creation in advertising.” 121 N.J.Super. at 519, 298 A.2d 77. Thus, plaintiffs conclude that the Pennysaver’s activities qualify as adver *172 rising and come within the exemption provided in N.J.S.A. 54:32B-8(ee).
It may well be true that the Pennysaver’s sale of advertising space and the dissemination of the finished product constitute advertising. However, the amounts paid to Del Val by advertisers are not the subject of this assessment. It is the amounts paid by Del Val to Custom Printing that have been taxed. Del Val does not claim that what it purchases from Custom Printing constitutes advertising. Clearly, Custom Printing has not sold advertising space of any kind to Del Val. Del Val itself is the one selling advertising space, not Custom Printing. It may appear that Custom Printing is involved in the dissemination of the Pennysaver and in that way is providing an advertising service to Del Val. However, as defendant correctly points out, once a printer completes a project, he is indifferent to what his customer does with the printed material. He has no concern for the ultimate distribution to the public. His task is complete when the printed matter is delivered to the customer. It is the customer, in this case Del Val, who effects distribution and is involved in “advertising” to the extent that advertising involves dissemination. The printer provides his skill and labor, the paper on which the material is printed, and ultimately the finished product. He does not sell advertising. Cf. Jefferson Pub. Co. v. Forst, supra; Princeton Community Phone Book, Inc. v. Taxation Div. Director, 145 N.J.Super. 589, 592, 368 A.2d 933 (App.Div.1976). Therefore, Del Val is not entitled to the exemption provided by N.J.S.A. 54:32B-8(ee).
Plaintiffs’ final statutory argument concerns the definition of “retail sale.” Excluded from the definition are sales of tangible personal property for the purpose of resale. N.J.S.A. 54:32B-2(e). If the sale of the printed matter from Custom Printing to Del Val was for the purpose of resale, then it may not be subject to sales tax. The design of the statute is for the *173 ultimate purchaser to pay the sales tax in a “sale for resale” situation.[5]
The statute defines a “sale” as follows:
Any transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume, conditional or otherwise, in any manner or by any means whatsoever for a consideration, or any agreement therefor, including the rendering of any service, taxable under this act, for a consideration or any agreement therefor. [N.J.S.A. 54:32B-2(f); emphasis supplied]
Defendant asserts that the conceded fact that the Pennysavers are distributed free of charge, /. e., without consideration, takes this situation out of the sale for resale category. He relies on Princeton Community Phone Book, Inc. v. Div. Director, Taxation, supra. The taxpayers in that case published and distributed the Princeton Community Phone Book free of charge to residents of the Princeton area each year. More than 99% of the gross revenue derived from the undertaking was produced from the sale of advertising space in the book. The Division of Taxation assessed a sales tax on the paper and the printing and binding services that the taxpayers purchased in order to produce the phone book. The Division argued that neither the services nor the tangible personal property were purchased for resale and thus they were proper subjects for imposition of a sales tax. The court’s brief opinion did not address the question of whether the free distribution of the phone book could constitute a resale on the basis that the consideration provided by the advertisers was not only for advertising but also for distribution to the public of the phone book free of charge. The court merely stated that the book was not produced for resale, based apparently on the fact that it was given away free.[6]
*174 Plaintiffs contend that a resale may be found despite the free distribution of the Pennysaver to the public. It cites the decision of the Supreme Court of Ohio in Penton Pub. Co. v. Kosydar, 45 Ohio St.2d 16, 340 N.E.2d 396 (1976), for the proposition that transfers of property constitute sales within the meaning of the statute, whether the source of the consideration is the consumer or a third party. The pertinent facts of that case presented the same question which must be considered here: a free distribution magazine; the full cost of production and distribution being paid for by advertisers; and a sales and use tax assessment on purchases of paper, ink and other publishing supplies used in production of the magazines. The relevant Ohio statutes defined “retail sale” and “sale” essentially as in the New Jersey statute. The Ohio statute contained a third pertinent definition. The term “price,” which pursuant to Ohio case law represents the measure of consideration, was, prior to 1959, defined as
The aggregate value in money of any thing paid or delivered, or promised to be paid or delivered, by a consumer to a vendor in the complete performance of a retail sale.... [Ohio Rev. Code § 5739.01(H)]
In 1959 the section was amended to delete the words “by a consumer to a vendor.” The intent of the Legislature, according to the Ohio Supreme Court, was to make transfers “sales” whether the source of the consideration for the transfer was the consumer or a third party.
The court found that the advertisers not only paid for the printing of their ads in the magazines, but also paid for the transfer of the completed magazines as entities to selected readers. Thus, the court deemed the free transfer of the magazines from the publisher to its readers to be a sale supported by the consideration passing from the advertisers to the *175 publisher. The transaction between the printer and publisher was held to be a sale for resale exempt from taxation.[7]
Plaintiffs herein maintain that the instant transaction was a sale for resale, following the same line of reasoning adopted by the Ohio court. Defendant seeks to distinguish Penton Pub. Co. on the ground that the Ohio statute had been specifically amended to achieve the result obtained. The New Jersey statute, he points out, has not been so amended. Nonetheless, the New Jersey statute appears essentially similar to the Ohio statutes as amended. The Ohio statute defines a sale to include “all transactions by which title or possession or both, of tangible personal property, is or is to be transferred . . . for a consideration in any manner ... . ” Ohio Rev. Code § 5739.01(B). The definition of “price,” as amended, adds nothing as to the source of the price, or consideration. The New Jersey definition of “sale” is also silent as to the source of consideration. Thus, viewing the overall scheme of both statutes, there is no bar to the adoption of the Ohio construction of a sale for resale.[8]
I am satisfied that a sale for resale is established under New Jersey law when the consideration for the resale comes from a third party other than the consumer. The reasoning underlying the “sale for resale” exemption is that the sales tax will be assessed against the receipts from the resale. If that same protection exists when the consideration for the resale comes from someone other than the consumer the exemption should be available. That protection does exist in this situation if we *176 assume that part of the advertising fee Del Val charges its advertisers represents a fee for the distribution of the Penny-savers to the public. That arrangement was found to exist in Penton Pub. Co. and was an essential element in the court’s decision.
In this case it is apparent from the evidence presented that Pennysaver advertisers are paying for the distribution of the booklets as well as for the display of their ads. Advertisers use the Pennysaver knowing that it will be distributed free in the community. They are aware that it reaches a wide audience, and this fact no doubt influences their decision to advertise in the Pennysaver. Directly on point, however, is the uncontradicted testimony of Del Val’s president that the cost of circulation is one of the three primary factors that determine advertising rates. Thus, the advertisers do in fact pay for the ultimate distribution of the Pennysavers to the reading public. Although advertising rates may not be broken down so as to reflect the exact amounts attributable to circulation, the cost of distribution of the Pennysaver is clearly a factor in the amounts paid by its advertisers. That finding was made in Penton Pub. Co. and I find it to be the case here.
It is of no moment that the fees paid to Del Val by its advertisers, including that portion of the fee representing distribution of the Pennysavers, would be exempt from sales tax if the Pennysaver is deemed to be a newspaper, N.J.S.A. 54:32B-8(ee), and the resale protection lost. Eligibility for the sale for resale exemption is not conditional on the receipt of sales tax on the resale. If the Pennysaver were deemed a newspaper and sold to the public for 10 cents per copy, for example, there would be no question of a sale for resale, although the reader would pay no sales tax on the purchase of a Pennysaver. N.J.S.A. 54:32B-8(e).
Accordingly, I find that the event claimed to be taxable by defendant is a sale of tangible personal property for the purpose of resale and exempt from sales tax under the New Jersey Sales and Use Tax Act.
*177 Plaintiffs’ alternative arguments, therefore, including that based on constitutional grounds, need not be addressed. See Donadio v. Cunningham, 58 N.J. 309, 325-26, 277 A.2d 375 (1971).
The Clerk of the Tax Court will issue the appropriate judgments.

Del Val and Custom Printing, which did all the printing work, each paid a portion of the assessment. Custom Printing has since merged with Del Val, and the latter corporation is now either liable for, or entitled to, the entire amount. For convenience, Del Val will be referred to as plaintiff.

Plaintiffs brief also refers to N.J.S.A. 54:32B-3(b)(5), which provides for the imposition of a sales tax on the receipts from every sale, except for resale, of “advertising services except advertising services for use directly and primarily for publication in newspapers and magazines.” This statute is not *168 applicable to the instant matter since the assessment was made pursuant to subsection (a), not subsection (b), of N.J.S.A. 54:32B-3. Cf. Fisher-Stevens, Inc. v. Taxation, Div. Director, 121 N.J.Super. 513, 518, 298 A.2d 77 (App.Div.1972), certif. den. 62 N.J. 575, 303 A.2d 328 (1973).

The Jefferson court did not specifically consider the question of whether a transaction between a printer and a publisher-taxpayer may not be subject to tax as a sale for resale because the issue was not presented by the parties. Id. at 992, 234 S.E.2d at 301.

I am not persuaded by Sears, Roebuck & Co. v. State Tax Comm'n, 370 Mass. 127, 345 N.E.2d 893 (Sup.Jud.Ct.1976), cited by plaintiff, to the extent it suggests a different conclusion.

Of course, if the item resold is a newspaper, magazine or periodical, the resale, too, is exempt from tax. N.J.S.A. 54:32B-8(e).

The court did dispute the reasoning of the trial judge that the paper sold to the taxpayers was converted into advertising space which was then “resold” to advertisers. However, the court did not explore any other theories, -nor were any raised in the briefs of the parties (which this court has examined), which might have justified a finding of a resale under the circumstances presented. The opinion does not preclude me from undertaking such exploration now. A case cannot be considered as a binding precedent on a legal *174 point that was not argued in the case and not mentioned in the opinion. 20 Am.Jur.2d, Courts § 190; 21 C.J.S. Courts § 186. See Illinois State Bd. of Elections v. Socialist Workers Party, 440 U.S. 173, 183, 99 S.Ct. 983, 989, 59 L.Ed.2d 230 (1979). Cf. Page v. Johnson, 45 N.J.Super. 97, 103, 131 A.2d 522 (Ch.Div.1957).

Penton Publishing Co. was relied upon in a recent decision of the Ohio Board of Tax Appeals. Printing expenses paid by a shopper’s guide similar in format to the Pennysaver were held exempt from sales tax as involving a sale for resale. D.S. Printing & Pub. Co. v. Lindiey, Ohio Tax Rep. (CCH) H 200-480 (June 13, 1980).

This court is mindful that generally statutes granting exemptions from taxation are strongly construed against one seeking exemption. Teaneck v. Lutheran Bible Institute, 20 N.J. 86, 90, 118 A.2d 809 (1955). However, the court is also aware that strict construction does not require distortion of the language of a statute or its legislative design. Boys’ Club of Clifton v. Jefferson Tp., 72 N.J. 389, 398, 371 A.2d 22 (1977).