FAIRLAWN SHOPPER, INC. AND SHOPPER DISTRIBUTORS, INC., PLAINTIFFS-APPELLANTS, v. DIRECTOR, DIVISION OF TAXATION, DEFENDANT-RESPONDENT.

Argued November 28, 1983—Decided October 4, 1984.

*Laurence B. Orloff* argued the cause for appellants (*Orloff, Lowenbach, Stifelman and Siegel,* attorneys).

*Harley A. Williams,* Deputy Attorney General, argued the cause for respondent (*Irwin I. Kimmelman,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel).

*Thomas J. Cafferty* and *Alexander F. McGimpsey, Jr.,* submitted a letter brief on behalf of *amicus curiae* New Jersey Press Association (*Seiffert, Frisch, McGimpsey & Cafferty,* attorneys).

The opinion of the Court was delivered by

CLIFFORD, J.

In these consolidated tax appeals we address the applicability of the New Jersey Sales and Use Tax Act, *N.J.S.A.* 54:32B–1 to –29 (Act), to the amounts expended by plaintiffs for certain outside printing costs in the plaintiffs' publication of free-circulation newspapers. The Director of the Division of Taxation (Director) seeks to apply the Act to so much of the printers' bills to plaintiffs as represent printing services, as well as to all materials other than newsprint. Plaintiffs allege two grounds of exemption: (1) that receipts from sales of newspapers are exempt from the tax imposed by the Act, see *N.J.S.A.* 54:32B–8(e) [1], and (2) that the sale of the newspapers from the printers to plaintiffs are sales for resale, which are exempt from the Act's tax pursuant to *N.J.S.A.* 54:32B–2(e)(1)(A). Alternatively, plaintiffs allege that the application of this tax to sales such as those at issue here is unconstitutional under the first amendment, *N.J.Const.* art. 1, para. 6, and the equal protection clause, *U.S.Const.* amend. XIV.

---

[1] *N.J.S.A.* 54:32B–8(e) was repealed in 1980. L.1980, c. 105, § 46. This provision is now embodied in *N.J.S.A.* 54:32B–8.5. L.1980, c. 105, § 17.

■ The record is embodied in the two-page "Stipulation of Facts" filed in each of these now-consolidated cases. The essential facts are as follows:

1. Plaintiff Fairlawn Shopper, Inc., owns, publishes, and distributes a newspaper entitled the "Fairlawn Shopper" and plaintiff Shopper Distributors, Inc., owns, publishes, and distributes newspapers entitled the "Hawthorne Shopper" and the "Garfield Shopper."

2. For the purposes of this litigation, the "Fairlawn Shopper," the "Hawthorne Shopper," and the "Garfield Shopper," when ultimately distributed to readers, are "newspapers" within the meaning of the Act.[2]

3. The newspapers are primarily distributed free-of-charge and their revenues are derived almost entirely from advertising.

4. The newspapers are actually produced by independent contract printing firms, which supply the necessary paper, ink, and dyes, printing the paper with their own machinery and employees. Plaintiffs nonetheless supply most of the substantive content of the newspapers.

5. The finished product is delivered by the printers to plaintiffs, who distribute the newspapers to the public on a weekly basis.

6. The amount of the tax in issue represents sales or use tax on the portions of the printers' bills to plaintiffs that represent the cost of printing services as well as materials other than newsprint.

7. The parties do not dispute the amount of tax that was assessed.[3]

---

[2]The Director's contention before this Court that plaintiffs publish "advertising circulars" or "shoppers' guides" is contrary to the record before the Tax Court. Not only was this factual issue stipulated by the parties, but counsel for the Director expressly acknowledged and accepted this stipulation, as evidenced in paragraph eight of the certification of Harley A. Williams, Deputy Attorney General, dated September 5, 1981. As the Third Circuit explained in *American Motor Inns, Inc. v. Holiday Inns, Inc.,* 521 *F.*2d 1230 (1975):

> After a litigant has stipulated what factual issues he intends to try before the district court, he may not over the objection of the opposing party, thereafter prejudice his opponent by raising issues beyond the scope of the stipulation. One of the basic tenets of American jurisprudence is that procedural fairness requires that each party have notice of the issues involved and an opportunity to be heard at a meaningful time and in a meaningful manner.
> [*Id.* at 1244 (footnotes omitted).]

[3]The tax assessed against plaintiff Fairlawn Shopper, Inc. was $11,760.47 plus penalty and interest. Plaintiff Shopper Distributors, Inc. was assessed $5,198.85 plus penalty and interest. The amounts in issue are secured by irrevocable documentary letters of credit.

On this factual basis the Tax Court found that the exemption afforded by *N.J.S.A.* 54:32B–8(e) was not intended to exempt newspapers as they pass between printer and publisher. However, Judge Andrew concluded that "the purchases by these plaintiffs of printing services and materials should properly be characterized as sales for the purpose of resale and exempt from sales and use tax. *N.J.S.A.* 54:32B–2(e)." (Footnote omitted). The Appellate Division, in an unreported decision, reversed the Tax Court judgment "for the reasons expressed in our opinion in *Del Val Pennysaver, Inc. v. Director, Division of Taxation,* [188 *N.J.Super.* 108 (1983)] * * *." In *Del Val Pennysaver* the court concluded that neither *N.J.S.A.* 54:32B–8(e) nor N.J.S.A. 54:32B–2(e) was applicable in circumstances such as these. In so deciding, the court, relying on *Princeton Community Phone Book, Inc. v. Director, Div. of Taxation,* 145 *N.J.Super.* 589 (App.Div.1976), certif. den., 73 *N.J.* 66 (1977), stated that "what plaintiff's advertisers were buying was advertising space and not the finished shoppers guides *per se.* * * * It is equally apparent that what the printer sold to plaintiff was neither purchased by plaintiff for resale as such nor converted into a component part of a product produced for resale by plaintiff." *Del Val Pennysaver, supra,* 188 *N.J.Super.* at 114. We granted certification, 94 *N.J.* 516 (1983), to determine the impact of the Act on the free-circulation newspaper industry.

## I

This appeal poses two entangled issues concerning tax exemptions. On the one hand we must determine what constitutes a "newspaper" for purposes of the Act and thereafter apply that determination to the publications at issue here. On the other hand we must review the "sale for resale" exemption of the Act to discern its effect on free-circulation publication. The resolution of these questions begins with an examination of the pertinent provisions of the Act.

*N.J.S.A.* 54:32B–8(e) provides that "[r]eceipts from the following shall be exempt from the tax on retail sales imposed under subsection (a) of section 3 and the use tax imposed under section 6: * * * (e) Sales of newspapers, magazines and periodicals * * *." The parties have stipulated that the publications at issue, when ultimately distributed to readers, were "newspapers" within the meaning of the Act. However, disagreement remains as to whether the newspapers in these circumstances should receive the tax exemption afforded by *N.J.S.A.* 54:32B–8(e).

Judge Andrew observed that the "newspapers" exemption was "aimed at the transfer of the publication between the publisher and the reader. This is so even though the product transferred is identical in form when it passes between printer and publisher as when it passes from publisher to reader." In support of this conclusion the Tax Court relied on the decision of the Supreme Court of Virginia in *Jefferson Publishing Corp. v. Forst,* 217 *Va.* 988, 234 *S.E.*2d 297 (1977). That case involved the imposition of sales tax on the total invoice charge made by a printer to a publisher of a free-circulation weekly booklet containing assorted tourist information. The Supreme Court of Virginia explained the mechanics of Virginia's taxing scheme as follows:

> [I]n the case of a periodical which may be *printed* by one person and *published* by another, two potentially taxable events occur. First, there is a bulk transfer, for a consideration, of the printed matter from the printer to the publisher; and, second, there is a subsequent sale of the periodical to members of the public. * * * Consequently, the first taxable event under these circumstances is a sale of *printed matter,* to which Regulation 1–86 [of the Virginia Retail Sales and Use Tax Rules and Regulations] speaks. The statutory exemption bears upon the second transaction, as we have said, and exempts non-newsstand sales. [217 *Va.* at 992, 234 *S.E.*2d at 300 (emphasis in original).]

Thus, the decision in *Jefferson Publishing Corp.* identified two statutory provisions that affected publishing industries. Under the Virginia statutes the sale of "custom printing" was taxable under section 1–86 of its Regulations, while under Code § 58–441.6(k) of the Virginia Retail Sales and Use Tax Act "[a]ny publication issued daily, or regularly at average inter-

vals not exceeding three months" was exempt from the sales
tax. Despite the fact that the nature of the "publications"
involved in *Jefferson Publishing Corp.* differs from the news-
papers at issue here—the former being geared to "inform
tourists, visitors, and newcomers to the area of dining and
entertainment facilities," 217 *Va.* at 989, 234 *S.E.*2d at 298,
while the latter contain news stories as well as advertise-
ments—it is clear that the statutory-construction analysis un-
dertaken by the Supreme Court of Virginia supports an analo-
gous resolution of the issue here.

Although we recognize a certain persuasiveness in
plaintiffs' reliance on *Greenfield Town Crier, Inc. v. Commis-
sioner of Revenue,* 395 *Mass.* 692, 433 *N.E.*2d 898 (1982), and
its conclusion that "if the Town Crier was a newspaper when it
was distributed to its readers, it was also a newspaper when it
was purchased by Greenfield from Shaw Press, Inc.," *id.* at —,
433 *N.E.*2d at 901, we cannot ignore the fact that the "newspa-
pers" exemption was not intended to extend beyond the exemp-
tion afforded the ultimate sale to the reader of the newspaper.
No place is this evidenced more clearly than in the Act itself.
The exemption found in *N.J.S.A.* 54:32B–8(e) cannot be read in
a vacuum. Just as the Supreme Court of Virginia acknowl-
edged the existence and applicability of a separate statutory
provision for taxing the printing process, we cannot avoid
reference to *N.J.S.A.* 54:32B–3(b)(1), which provides for the
imposition of sales tax on

> (b) The receipts from every sale, except for resale, of the following services:
> (1) Producing, fabricating, processing, printing or imprinting tangible person-
> al property, performed for a person who directly or indirectly furnishes the
> tangible personal property, not purchased by him for resale, upon which
> services are performed.

Thus, while the "Fairlawn Shopper," the "Hawthorne Shopper,"
and the "Garfield Shopper" may be "newspapers" in the defini-
tional sense when they pass from printer to publisher, the
printing costs incurred in that process remain taxable within
the provisions of the Act. The existence of this separate taxing
provision supports the conclusion that for purposes of the Act

the "newspapers" exemption applies to newspapers only as they pass from publisher to reader.

However, the fact that plaintiffs cannot successfully claim an exemption under *N.J.S.A.* 54:32B–8(e) does not diminish support for plaintiffs' assertion of a "sale for resale" exemption pursuant to *N.J.S.A.* 54:32B–2(e). In fact *N.J.S.A.* 54:32B–3(b)(1), while imposing a tax on the printing process, expressly excludes from the tax printing purchased for resale. In addition, the potential applicability of *N.J.S.A.* 54:32B–2(e) to circumstances such as these was specifically left unaddressed by the court in *Jefferson Publishing Corp., supra,* 217 *Va.* at 992 n.*, 234 *S.E.*2d at 301 n.* ("[W]e do not have the question whether such a transaction between a printer and a publisher-taxpayer may be exempt as a sale for resale."). We now conclude, as did the Tax Court, that the subject transactions constitute sales for resale and that plaintiffs are therefore entitled to an exemption in accordance with *N.J.S.A.* 54:32B–2 and –3.

*N.J.S.A.* 54:32B–3(a) imposes a tax on "[t]he receipts from every retail sale of tangible personal property, except as otherwise provided in this act." A "retail sale" is defined as "[a] sale of tangible personal property to any person for any purpose, other than (A) for resale either as such or as converted into or as a component part of a product produced for sale by the purchaser * * *." *N.J.S.A.* 54:32B–2(e)(1). Moreover, *N.J.S.A.* 54:32B–3(b) imposes a tax on "[t]he receipts from every sale, except for resale, of the following services: (1) Producing, fabricating, processing, printing or imprinting tangible personal property, performed for a person who directly or indirectly furnishes the tangible personal property, not purchased by him for resale, upon which such services are performed." Thus, the basic thrust of these provisions is that sales for the purpose of resale are to be exempted from the tax imposed by the Act. In other words, if the purchases by plaintiffs of printing services and materials are found to be sales for the purpose of resale,

then plaintiffs would be exempt from the Act's tax on those purchases.

Consequently, the consideration that remains is whether the purchases in question satisfy the "sale for resale" exemption provision. While the Act fails to supply a definition of "resale", the fact that the plaintiffs distribute the subject newspapers free-of-charge seems to fly in the face of a conclusion that plaintiffs' purchases of printing services and materials were "sales for resale". However, the Act does provide a definition of "sale, selling or purchase," *N.J.S.A.* 54:32B–2(f), that supports plaintiffs' assertion of a "sale for resale" exemption.

*N.J.S.A.* 54:32B–2(f) provides as follows:

> Sale, selling or purchase. Any transfer of title or possession or both, exchange or barter, rental, lease or license to use or consume, conditional or otherwise, in any manner or by any means whatsoever *for a consideration*, or any agreement therefor, including the rendering of any service, taxable under this act, for a consideration or any agreement therefor. [Emphasis added.]

Thus, the Act requires *some* consideration to pass during the transfer of title or possession, although the Act is unclear as to the source of the consideration. Judge Andrew, relying on the decision of the Supreme Court of Ohio in *Penton Publishing Co. v. Kosydar*, 45 *Ohio St.*2d 16, 340 *N.E.*2d 396 (1976), concluded that

> a sale for resale is established under New Jersey law when the consideration for the resale comes from a third party other than the consumer. * * * The only logical conclusion to be drawn from the facts presented is that the contract between advertiser and publisher, in the case of free distribution publications such as these, must reflect not only a purchase of advertising space but the obligation of the publisher to distribute the publications as well.

The decision in *Del Val Pennysaver, supra,* 188 *N.J.Super.* 180, relied on by the Appellate Division here, rejected this determination as one "that defies logic, flies in the face of both the statute and our determination in [*Princeton Community Phone Book, supra,* 145 *N.J.Super.* 589], and mandates a repeal of the Tax Court judgment under review." *Del Val Pennysaver, supra,* 188 *N.J.Super.* at 112.

However, the Appellate Division's conclusion that *"Princeton [Community] Phone Book* is directly in point" is off the mark. That case involved a claim of exemption from sales tax imposed on the sales of paper and of printing and binding services to a publisher of a community telephone directory. In concluding that no exemption was justified, the court summarily stated that the Princeton Community Phone Book "is not produced for resale and therefore is not exempt from the tax under *N.J.S.A.* 54:32B–2(e)(1)(A)." As the Tax Court below noted with reference to the decision in *Princeton Community Phone Book, supra,* 145 *N.J.Super.* 589,

> [t]he court's brief opinion did not address the question of whether the free distribution of the phone book could constitute a resale on the basis that the consideration provided by the advertisers was not only for advertising but also for distribution to the public of the phone book free of charge. The court merely stated that the book was not produced for resale, based apparently on the fact that it was given away free. [Footnote omitted.]

Like the court in *Princeton Community Phone Book,* the Appellate Division in *Del Val Pennysaver, supra,* 188 *N.J.Super.* 108, merely stated that

> it is obvious that what plaintiff's advertisers were buying was advertising space and not the finished shoppers guides *per se.* These publications were distributed by plaintiff to the public free of charge. It is equally apparent that what the printer sold to plaintiff was neither purchased by plaintiff for resale as such nor converted into a component part of a product produced for sale by plaintiff. The subject transactions were not exempt from the tax under *N.J.S.A.* 54:32B–2(e)(1)(A). [Id. at 114.]

We disagree, and concur with the Tax Court's conclusion below that "[i]n effect, the advertisers are subsidizing the readers of these papers to the extent of the price per copy that the publisher would otherwise charge the consumer."

▆ Although we recognize that tax exemptions are to be strictly construed against those seeking exemptions, "that principle does not justify distorting the language or the legislative intent." *Paper Mill Playhouse v. Millburn Tp.,* 95 *N.J.* 503, 506–07 (1984) (quoting *Boys' Club of Clifton, Inc. v. Jefferson,* 72 *N.J.* 389, 398 (1977)); *see also Millington Quarry, Inc. v. Taxation Div. Director,* 5 *N.J.Tax* 144, 147–48 (1983) ("[T]he

rule of strict construction does not require a strained construction or a construction that begrudges."). As this Court noted in *Schierstead v. Brigantine,* 29 *N.J.* 220 (1959), "statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as 'consonant to reason and good discretion.'" *Id.* at 230; *see also State v. Clark,* 29 *N.J.Law* 96, 99 (1860) ("If a literal construction of the words of a statute be absurd, the act must be so construed as to avoid the absurdity. The court must restrain the words."). In this case, to accept the Director's interpretation—that no consideration passes when the newspapers are distributed to the readers—would generate an unacceptable consequence: the subject newspapers would charge their readers some nominal price for the sole purpose of receiving the "sale for resale" exemption. We cannot accept this potential result.

Rather, we conclude that the consideration necessary to satisfy the Act's definition of a "sale" (and, by inference, a "resale") can be found to have been supplied by third parties—in this case, the advertisers who finance the publications. As Judge Andrew noted, "[i]t makes no logical sense for advertisers to purchase advertising space along with no guarantee that the publications will reach the reading public. This court will not close its eyes to the economic realities of the situation." Accordingly, we concur in the Tax Court's conclusion that plaintiffs' purchases of printing services and materials are "sales for resale" and are exempt, pursuant to *N.J.S.A.* 54:32B-2(e) from the tax imposed by the Act. Consequently, we need not address plaintiffs' alternative constitutional argument. *See Donadio v. Cunningham,* 58 *N.J.* 309, 325–26 (1971).

The judgment of the Appellate Division is reversed.

*For reversal*—Chief Justice WILENTZ and Justices CLIFFORD, SCHREIBER, HANDLER, POLLOCK, O'HERN and GARIBALDI—7.

*For affirmance*—None.