CONLEY, J. T. C.
The Director of the Division of Taxation issued a letter ruling on April 25, 1979 concluding that payments made by plaintiff for the lease or purchase of the components of its computer system were subject to sales tax pursuant to the Sales and Use Tax Act, N.J.S.A. 54:32B-1 et seq. Plaintiff thereupon, under protest, satisfied its sales tax liability. In the meantime, plain *561 tiff filed a complaint with this court seeking a determination that its lease or purchase payments were exempt from sales tax pursuant to N.J.S.A. 54:32B-8.13a (previously designated N.J. S.A. 54:32B 8(m)(l)). Plaintiff also seeks a refund of all taxes it has paid, with interest.
When plaintiff was founded its purpose was to provide addressing and mailing services and products to companies interested in direct mail advertising. As technology improved, plaintiff advanced from addressing by hand to addressing by typewriter and then to mechanical addressing using metal plates. It presently uses the computer system described at trial. More of the details of plaintiff’s business are set forth in Fisher-Stevens, Inc. v. Taxation Div. Director, 121 N.J. Super. 513, 298 A.2d 77 (App.Div.1972), certif. den. 62 N.J. 575, 303 A.2d 328 (1973).
Plaintiff receives a substantial portion of its revenue from the preparation and sale of address labels and mailing lists. The labels and lists are usually printed on computer stock or gummed label stock but may also be placed on magnetic tape. The labels and lists are either sold directly to plaintiff’s customers or are used by plaintiff in conjunction with its range of mail services, which entails applying the labels to customer-supplied mailing pieces, inserting material into envelopes and mailing the envelopes. Plaintiff also provides electronic data processing services. As part of its data processing services and its various mail services, plaintiff updates and otherwise maintains data files, processes data for surveys and analyses, performs keypunching and key-verification functions, and designs, develops and tests computer software to meet both its own needs and its clients needs. In addition, plaintiff uses its equipment for internal purposes in connection with its financial records and management reports.
The statutory provision relied upon by plaintiff is an exemption of the following:
Sales of machinery, apparatus or equipment for use or consumption directly and primarily in the production of tangible personal property by manufacturing, processing, assembling or refining. [N.J.S.A. 54:32B 8.13 a]
*562 The essence of plaintiff’s position is that its computer system is used directly and primarily to produce mailing lists, mailing labels and other tangible output in the form of printed reports and that the production is done by manufacturing or processing so that the entire cost of the computer system should be exempt from sales tax. The Director does not dispute certain of plaintiff’s contentions: that the exemption applies to leases as well as sales, that plaintiff’s computer system is equipment, that the computer system produces certain tangible personal property, and that the computer is used “directly” in the production of the tangible personal property. The Director also does not dispute that rental charges for a computer used primarily to control the flow of materials in a production line are exempt from sales tax pursuant to N.J.S.A. 54:32B-8.13 a and that, in general, charges for printing presses used for the production of printed material for sale are also exempt from tax pursuant to the same section.
The Director’s position is that plaintiff’s computer system is not used “primarily” in the production of mailing lists, mailing labels and printed reports. Furthermore, it is the position of the Director that the exemption sought by plaintiff is available only for industrial machinery and equipment — not for computer equipment that processes information — and that it is available only to taxpayers whose fundamental business activity is manufacturing and not to plaintiff which is engaged primarily in a direct mail advertising business. In his letter ruling of April 25, 1979 the Director concluded that plaintiff was not eligible for the exemption under N.J.S.A. 54:32B-8.13 a because it did not meet the business activity test of the statute — in other words, that its fundamental business activity was not as a manufacturer or processor of tangible personal property.
The evidence adduced at trial pertained to the nature of plaintiff’s computer system and its use in plaintiff’s business. The center of the system is the central processing unit (CPU). This is the device that controls the operation of the entire system. All other components are connected to the CPU and their functions are directed by it. The system also has display terminals consisting of a keyboard, a display unit (or cathode ray *563 tube) and a control panel. The computer operator communicates with the system by means of this terminal or console. The terminal is also used by plaintiff’s technical support personnel to create, modify and test computer programs. Additional hardware consists of a power unit, disks or data modules (on which information is recorded), disk storage units, tape drives (to introduce information stored on magnetic tape into the system), card readers (used to communicate information from keypunched cards to the system), hard copy printers and print trains (used to convert information on a disk or magnetic tape to paper) and intermediate control units (to control the operation of the printers so that the CPU does not have to control the printers directly). Plaintiff’s system also has remotely installed display terminals that are controlled by device adapter units, similar to the intermediate control units. Plaintiff uses modulator-demodulators, or modems, to convert the computer’s digital and numerical data to analog or electrical signals for transmission over telephone lines and for conversion back to digital data at the other end of the line. Plaintiff employs computer programs to make assignments to the components of its system and to process the data necessary for the production of mailing lists, mailing labels and other hard copy or printed material.
Plaintiff introduced into evidence representative samples of its hard copy products, including types of mailing lists and mailing labels. Other hard copy products were termed profile documents, prospect identification cards and weekly activity reports. Profile documents contain individual physician’s records that could be of assistance to the salespeople of a particular client of plaintiff, often a manufacturer of medical or pharmaceutical products. The records include each physician’s name, address, year of birth, type of practice, hospital affiliation, staff names, types of the client’s products used, competitive products used, the physician’s hobbies and special interests, and information recorded as a result of specific sales visits. Prospect identification cards and weekly activity reports include essentially the same types of information in varying amounts of detail. The data on all these forms is produced by plaintiff’s computer system.
*564 As stated above, the main issue in this case is whether plaintiff’s computer system is used “primarily” in the production of its hard copy products such as mailing lists, mailing labels and printed reports. Both parties cite a regulation of the Director of the Division of Taxation as the standard to be applied in a determination of primary use. The regulation is as follows:
Concerning primary use, where a single unit of machinery, apparatus or equipment is put to use in two different activities, one of which is a “direct use” and the other of which is not, the property is not exempt from tax unless the manufacturer, processor, assembler or refiner makes use of the property more than 50 percent of the time directly in manufacturing, processing, assembling or refining operations, except in those cases where such machinery, apparatus or equipment is rented, leased, or used by persons other than the purchaser. [N.J. A.C. 18:24-4.4(d)]
In order to prove that its computer system is used primarily to produce tangible personal property, meaning that it is used more than 50% of the time for that purpose, plaintiff’s senior vice-president of operations testified concerning utilization of the company’s system. Drawing upon company records, the vice-president offered exhibits setting forth the ratio of computer hours devoted to direct hard copy production to the total number of the computer’s functional hours. In making these computations for various reporting periods plaintiff’s witness determined that the percentage of computer time devoted to direct production of mailing labels and other hard copy always exceeded 50%, ranging from 50.2% to 65.7%. The overall average percentage of such use, according to plaintiff, was 59.1%.
As defendant’s computer expert observed, however, plaintiff was able to obtain such high percentages only because plaintiff included in its total of direct production time such functions as the creation or manipulation of files to be used in the process of printing labels, testing of programs to be used in the production of labels, updating of files, computer runs to review mailing lists for sale to customers, and research and development regarding data base refinement. Plaintiff justified . such all-inclusive treatment of its various business functions as the direct production of hard copy on the ground that its entire computer system is used to update, store, sort and otherwise transcribe mailing lists, mailing labels and reports.
*565 It is the conclusion of the court that only the actual printing function of plaintiff’s computer system would come within the intent of the sales tax exemption dealing with the sale of equipment for use in the production of tangible personal property. The actual printing done by plaintiff’s computer appears to have taken only 10% of the computer’s total functional time. The majority of plaintiff’s computer time was devoted to data processing rather than printing. The data processing function is obviously closely related to plaintiff’s production of mailing labels and mailing lists, but it is a distinguishable function that is not analogous to the printing of labels by a conventional printing press. Accordingly, it cannot be said that plaintiff’s entire computer system was used “primarily” in the production of hard copy within the meaning of N.J.A.C. 18:24-4.4(d).
This conclusion obviates the need for the court to consider the merits of either the Director’s business activity test or plaintiff’s contention that the requirement that it pay its sales tax assessment deprived it of the use of its property without just compensation pursuant to N.J. Const. (1947), Art. I, § 20.
The Clerk of the Tax Court will enter judgment dismissing plaintiff’s complaint.