**Bob BULLOCK, Comptroller of Public Accounts, et al., Appellants,**

v.

**CORDOVAN CORPORATION, Appellee.**

No. 14368.

Court of Appeals of Texas, Austin.

Aug. 28, 1985.

Rehearing Denied Oct. 2, 1985.

Jim Mattox, Atty. Gen., David Mendez, Asst. Atty. Gen., Austin, for appellants.

Diane M. Henson, Graves, Dougherty, Hearon & Moody, Austin, for appellee.

Before SHANNON, C.J., and BRADY and GAMMAGE, JJ.

SHANNON, Chief Justice.

Cordovan Corporation filed suit in the district court of Travis County to recover $19,116.66 in use taxes paid under protest to the Comptroller of Public Accounts. The Comptroller filed a counterclaim for sales taxes allegedly due from Cordovan's sale of its publications. After a bench trial, the district court concluded that Cordovan was entitled to an exemption from the use tax and, accordingly, rendered judgment that Cordovan recover the sum paid together with interest and that the Comptroller take nothing on its counterclaim. This Court will affirm the judgment.

The Comptroller sought to impose a use tax on certain supplies, materials and services such as printing, photography, and other processes in the physical preparation of two of Cordovan's publications. A use tax is imposed on the storage, use, or other consumption of a taxable item purchased from a retailer for storage, use or other consumption in Texas. Tex.Tax Code Ann. § 151.101(a) (1982). In district court, Cordovan argued successfully that its operation was entitled to the benefit of the Tex.Tax Code Ann. § 151.302 exemption. Section 151.302 provides:

> The sale for resale of a taxable item is exempted from the taxes imposed by this chapter.

The facts underlying this dispute may be described as follows. Cordovan is a publishing company located in Houston. Cor-

dovan publishes several periodicals, "controlled subscription" publications, aimed primarily at certain industry groups. Among such publications are *Jet Cargo News* and *Western Outfitter.* The readers of *Jet Cargo News* consist primarily of persons with decision-making authority in industries which often use air freight. The readers of *Western Outfitter* are primarily retailers who make large and frequent purchases of western wear and leather goods. The qualified readers pay nothing for the publications they receive. A *de minimis* number of copies of each of these publications is distributed on a paid circulation basis.

It is the quality of Cordovan's mailing lists, which contain frequent users of air freight and frequent purchasers of large orders of western goods, that encourages airlines and manufacturers of western goods to place advertisements with Cordovan. Cordovan updates these lists frequently and accepts subscriptions only from those whom it considers qualified readers. Persons not likely to use the products and services of Cordovan's advertisers in its controlled circulation publications are deleted from the list of qualified readers.

In finding of fact three, the district court determined that Cordovan receives its income with respect to these publications from the businesses which advertise in these publications. Cordovan guarantees its volume of distribution of its publications to its qualified readers. The district court found that these considerations are the essence of the bargain between Cordovan and the businesses that advertise in *Jet Cargo News* and *Western Outfitter.*

The rates paid by advertisers in these publications reflect the promised volume of circulation of *Jet Cargo News* and *Western Outfitter,* as well as the audience of qualified readers promised by Cordovan. In the publishing and advertising industry, rates for advertisements placed in controlled circulation publications are much higher per thousand circulation than for those placed in other publications because of the prom-

ise that the tangible magazine will be delivered to only a specified category of readers.

Cordovan's staff assembles the monthly draft of articles, features and advertisements. Cordovan then sends the draft to an independent printer who prints the requested number of copies. Upon delivery of the copies from the printer, Cordovan mails them to the readers on its mailing list. Except for a very small number of subscription sales, Cordovan distributes the publications free of charge.

Finally, in amended finding five, the district court found that Cordovan is paid and receives income with respect to these publications from the businesses that advertise in the publications, and this income is the consideration valued in money for transferring possession and title of the copies of the publications containing a particular advertiser's advertisement to its list of qualified readers.

Most of the findings of fact filed by the court are not disputed and are reflected in the above summarized facts. The district court concluded that Cordovan purchases the printing and other material included in the publications of *Jet Cargo News* and *Western Outfitter* for resale within the meaning of Tex.Tax Code Ann. § 151.302. The district court concluded also that the counterclaim filed by the Comptroller was an assessment of taxes made more than four years from the date such taxes were due and payable and was barred by limitations pursuant to Tex.Tax Code Ann. § 111.201.

By point of error two, the Comptroller attacks the district court's conclusion that Cordovan is entitled to the exemption from the use tax. Specifically, the tax collector claims that Cordovan's purchase of the printing and material was not a sale for resale "because there is no consideration valued in money." The point is overruled.

■ The Comptroller's position is that in order for there to be a "resale," Cordovan must receive from someone, "consideration valued in money." We observe in the be-

ginning that the definition of a "sale for resale" found in § 151.006 does not contain a requirement that the "consideration be valued in money." That definition provides:

**§ 151.006. "Sale for Resale"**

"Sale for resale" means a sale of:

(1) tangible personal property or a taxable service to a purchaser who acquires the property or service for the purpose of reselling it in the United States of America or a possession or territory of the United States of America in the normal course of business in the form or condition in which it is acquired or as an attachment to or integral part of other tangible personal property or taxable service.

The source of the Comptroller's contended-for definition is found in the definition of "sales price" or "receipts" in § 151.007:

**§ 151.007. "Sales Price" or "Receipts"**

(a) "Sales price" or "receipts" means the total amount for which a taxable item is sold, leased, or rented, valued in money, without a deduction for the cost of:

(1) the taxable item sold, leased, or rented;

(2) the materials used, labor or service employed, interest, losses, or other expenses;

(3) the transportation of tangible personal property before the sale; or

(4) transportation incident to the performance of a taxable service.

This Court has no difficulty in concluding that the definition of "sales price" or "receipts" has little or no relevance in defining "sale for resale."

On the other hand, § 151.005(1) appears helpful and provides:

**§ 151.005. "Sale" or "Purchase"**

"Sale" or "purchase" means any of the following when done or performed for consideration:

(1) a transfer of title or possession of tangible personal property;

Cordovan points out that there are two elements of this definition. First, title or possession must be transferred, and sec-

ond, there must be consideration for the transfer. With respect to the facts in this appeal, the first element is undisputably satisfied as Cordovan transfers possession of the publications to the readers. At issue is whether or not Cordovan receives consideration. The Comptroller admits in his brief: "[t]he Comptroller agrees that in certain situations consideration can be paid by a third party. Nothing in the statutory definition of 'sale' requires the consideration to be paid by the consumer (or reader in this case)." As no consideration was received from the readers except for a *de minimis* number of subscriptions, the principal issue is whether the advertisers gave consideration for the transfer by Cordovan to the readers. This consideration is distinct from their payments for the publication of their advertisements.

The most significant element of the transaction between Cordovan and its advertisers is that Cordovan guarantees distribution of its controlled circulation publications only to qualified readers likely to use the advertiser's products. The advertising rates for such controlled circulation publication are much higher than for regular publications because of the promise that the magazine will be delivered to only a specified category of readers. Accordingly, the advertisers do not pay merely to have their advertisements published, but also pay an additional amount to have the magazines distributed to a certain group. As such, the advertisers do pay additional consideration to have the magazines delivered to a special group of readers.

Courts in other states have considered whether or not a controlled circulation publication qualifies for a "sale for resale" exemption. In *Penton Publishing Co. v. Kosydar*, 45 Ohio St.2d 16, 340 N.E.2d 396 (1976), the Ohio Supreme Court was confronted with the identical issue in a use tax case: whether consideration existed for a transfer of such publications distributed free to readers under a statutory definition of "sale" requiring the establishment of the same two elements of transfer and consideration. The Court in *Penton* decid-

ed such consideration existed. The Court wrote:

Tax Commissioner contends that the advertisers only paid for the printing of their ads in magazines, and not for the transfer of the completed magazines as entities to selected readers. Their argument lacks merit. Not only did the advertisers pay to have their ads printed, but they paid to have them printed within the format of the entire magazine and distributed to a particular group of readers.

340 N.E.2d at 398.

Likewise, in *Fairlawn Shopper, Inc. v. Director, Division of Taxation*, 98 N.J. 64, 484 A.2d 659 (1984), the New Jersey Supreme Court faced the issue of whether a publisher of a free-circulation newspaper was exempt from sales and use taxation under a "sale for resale" statutory exemption. The publisher claimed that he was not liable for taxes on the printing and materials furnished by the printer because the sale from the printer to him was "sale for resale." Like the Texas statute, the New Jersey statute failed to supply a definition of "resale," so the court looked to the statutory definition of "sale" which basically required a transfer and consideration. The Court held that consideration was furnished by the publisher:

... in effect, the advertisers are subsidizing the readers of these papers to the extent of the price per copy that the publisher would otherwise charge the consumer.

484 A.2d at 664.

 The district court properly concluded that the transaction between the printer and Cordovan was exempt from use taxation pursuant to the "sale for resale" exemption of § 151.302.

By no evidence and insufficient evidence points of error the Comptroller complains of the findings of fact three and five. As indicated, these findings relate to the consideration received by Cordovan from its advertising patrons. The thrust of the Comptroller's argument is that there is no evidence or insufficient evidence that Cor-

dovan received consideration valued in money. As developed in the resolution of point of error two, Cordovan was not required to show that it received consideration valued in money in order to qualify for the "sale for resale" exemption. The points are overruled.

By point of error number five, the Comptroller contends that Cordovan made a gift of the publications to the readers and this gift constitutes a "taxable use" in the "scheme" of the Texas Sale and Use tax. The Comptroller furnishes no relevant statutory authority in support of this thesis. In advancing this contention, the Comptroller ignores one of the principal statutes involved in this litigation, § 151.302, which provides that a "sale for resale" is exempt from the Chapter 151 limited sale, excise and use taxes. Having decided that Cordovan engaged in a "sale for resale," this Court rejects the Comptroller's unsupported argument that somehow the transaction is not a "sale for resale," but instead, a "gift."

Finally, the Comptroller complains of the district court's rendition of the take-nothing judgment in response to his counterclaim because the court concluded that the assessment was barred by limitations. By his counterclaim filed March 8, 1984, the Comptroller sought recovery of $86,950.39 for sales tax on the total revenues received from advertisers under the theory that if, indeed, the Cordovan transaction constitutes a "sale for resale," it necessarily "resells" the magazine *to the advertisers* and accordingly is liable for sales tax pursuant to § 151.051.

The district court concluded that the counterclaim was barred by § 111.201 which provides:

No tax imposed by this title may be assessed after four years from the date that the tax becomes due and payable.

The Comptroller concedes in his brief that the assessment was made for time periods outside the general four-year limitations period, but he insists that the claim is not barred by reason of "two theories."

Under the first theory he, in fact, argues two theories, § 151.507(c) and *res judicata.* The pertinent part of § 151.507 provides:

(c) The limitations provided by Subsections (a) and (b) of this section do not apply to a determination proposed to be made:

(1) for the collection of an amount of sales tax on the sale of a taxable item if a deficiency notice has been given or is given for the collection of the use tax *on the same taxable item;* or

(2) for the collection of the use tax on the storage, use, or consumption of a taxable item if a deficiency notice has been or is given for the collection of the sales tax on the same taxable item. (Emphasis supplied).

■ The Comptroller suggests that because a deficiency notice was provided for the collection of the use tax, he need not have tendered subsequent notice to collect the sales tax. Both notices, however, must relate to "the same taxable item." The Comptroller mistakenly argues that the magazines, *"Western Outfitter* and *Jet Cargo News,* are the tangible personal property upon which the original use tax assessment was made by the Comptroller." "Taxable item" is defined as "tangible personal property." § 151.010. "Tangible personal property" is defined as "personal property that can be seen, weighed, measured, felt, or touched or that is perceptible to the senses in any other manner." § 151.009. The use tax assessment of July 21, 1978, was levied on printing, photography and other goods and services that went into the physical production of the publications. The sales tax assessment on March 8, 1984, was levied on advertising revenues. Accordingly, the two assessments were not on "the same taxable item" and the § 151.-507 exception to the general limitations period is not applicable.

The Comptroller's argument predicated upon *res judicata* is not made clear. He suggests that the doctrine of *res judicata* somehow barred the sales tax claim from being asserted in the use tax deficiency suit because "all claims relating to a taxable year constitute a single cause of action and since the true issue in a tax case is taxpayer's total tax liability for a given taxable period, the doctrine of *res judicata* would apply only as to any separate lawsuits the Comptroller could have instituted."

■ The rule of *res judicata* in Texas bars litigation of all issues connected with a cause of action or defense which, with the use of diligence, might have been tried in a former action as well as those which were actually tried. *Abbott Laboratories v. Gravis,* 470 S.W.2d 639 (Tex.1971). The rule of *res judicata* is a bar asserted in subsequent suits and is not, as the Comptroller seems to suggest, a bar to asserting additional claims in an initial suit which has not proceeded to final judgment.

The Comptroller's "second" theory as to why the counterclaim was not barred by limitations is again two-fold. He suggests that the asserted sales tax is an offset to Cordovan's suit for recovery of use taxes. Because the tax collector's offset theory is not supported by argument or authority, this Court need not give it further consideration. *Rayburn v. Giles,* 182 S.W.2d 9 (Tex.Civ.App.1944, writ ref'd).

The Comptroller claims, secondly, that the sales tax assessment is a compulsory counterclaim filed in response to Cordovan's suit seeking a refund of the use tax paid under protest. Assuming the Comptroller's argument *arguendo,* the counterclaim is still barred by limitations. The Comptroller filed his answer to Cordovan's original suit in December 19, 1983. On that date the claim for sales tax was barred by the four-year statute of limitations. The Comptroller had thirty days from the date of appearance to assert the counterclaim. Tex.Rev.Civ.Stat.Ann. art. 5539c (Supp.1985). The counterclaim, however, was filed on March 8, 1984, more than thirty days after the December 19, 1983, appearance day.

The judgment is affirmed.