John **SHARP**, Comptroller of Public Accounts for the State of Texas; Dan Morales, Attorney General of the State of Texas; and Martha Whitehead, Treasurer of the State of Texas, Appellants,

v.

## COX TEXAS PUBLICATIONS, INC., Appellee.

No. 03–96–00345–CV.

Court of Appeals of Texas, Austin.

April 10, 1997.

Dan Morales, Attorney General, Thomas J. Meaney, Assistant Attorney General, Taxation Division, Austin, for Appellants.

Laura Lee Stapleton, George, Donaldson & Ford, L.L.P., Austin, for Appellee.

Before CARROLL, C.J., and KIDD and B.A. SMITH, JJ.

BEA ANN SMITH, Justice.

Cox Texas Publications, Inc. brought a tax protest suit against the Comptroller and other statutory defendants to recover sales taxes paid on Cox's distribution of *Experience Austin* magazine. *See* Tex. Tax Code Ann. § 112.052(a) (West 1992). Following a bench trial, the trial court rendered judgment for Cox. The Comptroller brings four points of error contending the trial court erred in concluding that Cox owed no sales tax and in denying its counterclaim for tax on materials and costs associated with publishing the magazine. We will affirm in part and reverse and remand in part the trial court's judgment.

## BACKGROUND

Cox publishes *Experience Austin*, a magazine for visitors to Austin, containing area maps and listings of tours, museums, sporting events, restaurants, and shopping. The magazine also carries advertisements by retailers who are attempting to sell their products and services. *Experience Austin* is distributed free of charge in hotel rooms, restaurants, news racks, and numerous other locations. The magazine is not distributed to any particular industry group nor to any selected readers or businesses. A *de minimis* number of copies are sold by sub-scription for a fee; otherwise, Cox receives revenue only from advertisers to create, photograph and publish the advertisements. After an audit for the period June 1, 1989 through June 30, 1993, the Comptroller determined that *Experience Austin* met its definition of a "controlled circulation magazine," which made the magazine subject to a sales tax of $116,429.82. *See* 34 Tex. Admin. Code § 3.299(b)(3)(A) (West 1996). Cox paid the tax under protest and then filed suit in district court seeking a refund of the entire amount. *See* Tex. Tax Code Ann. §§ 112.051, .052 (West 1992). The Comptroller filed a counterclaim alleging that, if Cox did not owe sales tax on the distribution, it owed tax on the materials and costs associated with publishing the magazine. The trial court concluded the Comptroller had improperly assessed sales tax against Cox and ordered a refund of the tax paid. Additionally, the trial court denied the Comptroller's counterclaim. The Comptroller appeals both rulings.

## DISCUSSION

In its first three three points of error, the Comptroller contends the trial court erred in (1) concluding the Comptroller improperly assessed sales tax on Cox's transfer of free magazines; (2) considering the industry definition of "controlled circulation magazine" rather than the Comptroller's promulgated definition; and (3) concluding Cox owed no sales tax under the "essence of the transaction" test.

Pursuant to the Tax Code, Cox's suit for a refund of taxes was by trial de novo. *See id.* § 112.054. The trial court made several conclusions of law upon which the judgment for Cox was based. An appellate court reviews a trial court's conclusions of law de novo. *See Barber v. Colorado Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex.1995); *Piazza v. City of Granger*, 909 S.W.2d 529, 532 (Tex.App.—Austin 1995, no writ); *Harris County Appraisal Dist. v. Wilkerson*, 911 S.W.2d 84, 86 (Tex.App.—Houston [1st Dist.] 1995, writ denied). A conclusion of law will not be reversed unless it is erroneous as a matter of law. *Westech Eng'g, Inc. v. Clearwater Con-*

*structors, Inc.,* 835 S.W.2d 190, 196 (Tex. App.—Austin 1992, no writ).

### "Sale" under the Tax Code and Cordovan

A brief history of the Comptroller's treatment of free magazines will assist in understanding this dispute. The Tax Code imposes a sales tax on every sale of a taxable item. Tex. Tax Code Ann. §§ 151.010, .051(a) (West 1992). "Sale" is defined as the *transfer* of title or possession of tangible personal property *for consideration. Id.* § 151.005. Prior to 1985, the distribution of a free magazine was never considered a sale; instead, the Comptroller assessed a use tax on the materials and supplies purchased to produce the magazines. *See id.* § 151.101(a). Concerning magazine distribution, sales tax and use tax were essentially analogous to one another but at opposite ends of the production and distribution process. When a magazine was distributed free of charge, it was not a "sale" but was subject to use tax on the materials purchased; when a magazine was distributed for a fee it was subject to sales tax. A publisher paying sales tax avoided use tax on the materials by falling under the "sale for resale" exemption.[1]

In *Bullock v. Cordovan Corp.,* 697 S.W.2d 432 (Tex.App.—Austin 1985, writ ref'd n.r.e.), this Court expanded the meaning of "sale" under the Tax Code to include the transfer of a free magazine under very limited circumstances. We held that Cordovan, the publisher of two free publications, was entitled to the "sale for resale" exemption from use tax on materials purchased to produce the magazines. *Id.* at 436. This "sale" or "resale" occurred because the advertisers furnished consideration for the transfer of the free magazines by paying a higher than normal rate for the advertising. This was "additional consideration" and quite distinct from payment for the service of producing their advertisements, a service not subject to sales tax.[2] *Id.* at 435. Advertisers paid a premi-

um to have the two publications, *Western Outfitters* and *Jet Cargo,* distributed to two *specific* industry groups, western-wear retailers and managers in the air freight industry. Cordovan regularly updated a mailing list of these targeted groups to ensure that subscribers were "qualified readers," only those likely to use the products and services of advertisers in the magazines. *Id.* at 434. Advertisers paid additional consideration because Cordovan promised that a specified number of magazines would be delivered to a specified category of readers. *Id.* at 435. It was this particular guarantee for which advertisers paid *additional* consideration. Thus, the transfer of the magazines to *specified* readers for this additional consideration constituted a "three-party sale," within the language of the Code. Prior to *Cordovan* the concept of "sale" had not been applied to include the transfer of a free publication where consideration is paid not by the readers but by a third party, the advertisers.

### Rule 3.299

■ After *Cordovan,* the Comptroller passed rule 3.299 requiring every publisher of a free magazine to collect sales tax from the advertisers based on a fictitious "sales price," under the "three-party sale" concept. 34 Tex. Admin. Code § 3.299(b)(3) (1996). In order to assess a sales tax against Cox, the Comptroller was required to find (1) a transfer of tangible personal property and (2) consideration. Relying on *Cordovan* and rule 3.299, the Comptroller reasoned that the advertisers furnished sufficient consideration to make Cox's distribution of the publication *Experience Austin* subject to sales tax.

The Comptroller contends the tax assessed against Cox under rule 3.299 was proper and that the trial court erred in not applying the rule's definition of "controlled circulation magazine."[3] The Comptroller is vested with statutory authority to promulgate rules for the collection of taxes consistent with the Tax

---

1. Under the Code, "the sale for resale of a taxable item is exempted from the taxes imposed" by the Sales, Excise & Use chapter. Tex. Tax Code Ann. § 151.302 (West 1992).

2. Advertising service is not a taxable service, unlike many others under the Tax Code. *See* Tex. Tax.Code. Ann. § 151.0101 (West 1992).

3. Rule 3.299 defines "controlled circulation magazine" as any magazine paid for by advertisers rather than recipients. 34 Tex. Admin. Code § 3.299(b)(3) (West 1996).

Code, the state and federal constitutions, and the common law. *See* Tex. Tax Code Ann. § 111.002(a). A rule that "clearly affects individual rights or obligations to the extent it applies is a 'legislative' as opposed to an 'interpretative' rule." *See Gulf States Utils. Co. v. Public Util. Comm'n of Texas,* 784 S.W.2d 519, 528 (Tex.App.—Austin 1990), *aff'd,* 809 S.W.2d 201 (Tex.1991). A "legislative" rule has two characteristics: (1) it goes beyond interpretation to promulgate substantive provisions, and (2) the statute, which delegates to the agency the power to make rules, provides that those rules have authoritative force. *First Fed. Sav. & Loan Ass'n v. Vandygriff,* 639 S.W.2d 492, 499 (Tex. App.—Austin 1982, writ dism'd w.o.j.). The Comptroller clearly intended rule 3.299 to have the force of law by declaring a particular type of transaction a "sale" subject to sales tax. Rule 3.299 is binding, like a statute, *provided* the rule is within the power delegated to the agency, is the product of proper procedure, and is reasonable. *See id.; Bullock v. Hewlett–Packard Co.,* 628 S.W.2d 754, 756–57 (Tex.1982); K. Davis, Administrative Law Text, § 5.03 (3rd ed. 1972). In light of the Comptroller's authority to adopt rules consistent with common law and its reliance on *Cordovan* in promulgating rule 3.299, the rule is only reasonable to the extent that it interprets *Cordovan* correctly. The Comptroller's theory, enacted in rule 3.299, is that *Cordovan* creates a sale any time retailers pay to advertise in a magazine that is distributed free of charge. We hold that rule 3.299 is an incorrect reading of this Court's decision in *Cordovan* and is therefore unreasonable.

*Improper assessment of sales tax in light of Cordovan and the Tax Code*

■ The Comptroller's assessment of tax against Cox under rule 3.299 contradicts both the reasoning in *Cordovan* and the clear intent of the Tax Code. In *Cordovan,* we held the consideration for the transfer of a free publication was not the amount paid for ordinary advertising services but the *additional* rates paid to guarantee that the magazines were distributed to targeted readers. *Cordovan,* 697 S.W.2d at 435. Those circumstances do not exist here, where the parties have stipulated that (1) *Experience Austin*

was not distributed to a specific list of individuals; (2) there was no guarantee to anyone that the magazine went to any particular person in any particular place; (3) no subscription or customer list was ever provided to potential advertisers because none ever existed; (4) advertisers who contracted with Cox testified that they were buying a *service* when they paid to place their advertisements in the magazine; and (5) advertisers were not asked to pay a premium price for delivery of the magazine to specific people or to a specific mailing list of "qualified readers." Because Cox's advertisers paid nothing beyond the cost of ordinary advertising services, the Comptroller's assessment of tax is inconsistent with the "three-party sale" theory of *Cordovan. Cordovan* is limited to the particular circumstances where the third party pays for something more than advertising. To the extent rule 3.299 defines a "three-party sale" more expansively, it is an incorrect statement of the court's holding.

The Comptroller's assessment of sales tax against Cox illustrates the overly broad nature of rule 3.299. The rule requires that the sales tax collected from advertisers be based on the "sales price" of the magazine. 34 Tex. Admin. Code § 3.299(a)(3)(A) (West 1996). Because *Experience Austin* originally had no stated sales price, Cox was first assessed sales tax on all its advertising revenues from October 1992 through March 1993. After reflection, the Comptroller allowed publishers of free magazines to state a fictitious, but reasonable, sales price on the magazine on which sales tax would be assessed. From April 1993 through June 1993, Cox was then assessed sales tax based on the fictitious "sales price" multiplied by the total number of copies produced rather than just those delivered. The sales tax Cox was required to pay for this latter period was substantially more than the total amount Cox collected from advertising revenues. In *Cordovan,* the "three-party sale" would have been subject to sales tax but for the statute of limitations bar. *See Cordovan,* 697 S.W.2d at 436–37. In that case, because the *additional* consideration constituted the sale, the sales tax would have been assessed only on the premium paid over and above the normal

cost of advertising services. Here, in first assessing tax on Cox's entire advertising revenues, the Comptroller taxed ordinary advertising services rather than any additional consideration. Furthermore, in changing the assessment to one based on a "sales price," the Comptroller has again taxed the production cost of the advertising services rather than any premium advertisers might have paid, as in *Cordovan*. Thus, rule 3.299 as enacted is overly broad because it imposes sales tax on ordinary advertising revenues even though advertising is a non-taxable service. *See* Tex. Tax Code Ann. § 151.0101 (West 1992). We are mindful that the *Cordovan* decision makes assessment of the sales tax difficult when the Comptroller must deduct the ordinary cost of advertising to determine the amount of the premium on which to assess the tax. This opinion will limit the circumstances in which such difficult calculations will be necessary.

The Comptroller's attempt to assess sales tax against Cox also defies the intent of the Tax Code. The overriding intent of the code is to tax sales of tangible items and not advertising services. *See id.* The trial court concluded that the essence of the transaction between Cox and the advertisers was the purchase of non-taxable advertising services. The object of the "essence of the transaction" test is to "determin[e] whether a transaction is subject to sales tax [and] involves the determination of the ultimate object." *Sharp v. Direct Resources for Print, Inc.*, 910 S.W.2d 535, 538 (Tex.App.—Austin 1995, writ denied). The inquiry concerns what is being sold or the customer's basic purpose for entering into the transaction. *See Bullock v. Statistical Tabulating Corp.*, 549 S.W.2d 166, 169 (Tex.1977); *Williams & Lee Scouting Serv., Inc. v. Calvert*, 452 S.W.2d 789, 792 (Tex.Civ.App.—Austin 1970, writ ref'd). The Comptroller asserts that the proper focus in applying the test should be the transfer of the magazine to the readers rather than the purchase of advertising by the advertisers. Again, the Comptroller attempts to fit *Experience Austin* within the "three-party sale" theory of *Cordovan* merely because both cases involve advertising and the free distribution of magazines. In *Cordovan* the object of the transaction was the distribution of a magazine to a targeted group for which additional consideration was paid. The advertisers purchased not only ads, but also the promise that the magazines would be delivered to customers known to be interested in the advertised products. The advertisers' additional premiums for the publisher's efforts to select, update, and deliver publications to the targeted groups satisfied the sales tax requirement of "a transfer for consideration" and entitled the publisher to claim the transaction was a "sale" for purposes of the "sale for resale" exemption. In this case, it is the Comptroller who is attempting to claim that the transaction was a "sale" in order to impose a sales tax. But when advertisers pay only for advertising services, there is no consideration paid by a third party for the transfer of the magazine. The distribution of *Experience Austin* is a transfer without consideration and cannot be deemed a sale.

Rather, the object of the transaction between Cox and its advertisers was the procurement of ordinary advertising services. The advertisers paid only to have their ads placed in Experience Austin. "[When] the essence of a sale is not tangible personal property but instead concerns intangible personal property such as a service, the transaction is not taxable under any definition of sale." *Direct Resources for Print, Inc.*, 910 S.W.2d at 538; *see* Tex. Tax Code Ann. § 151.0101 (West.1992). In light of *Cordovan* and the Tax Code, we conclude the Comptroller's formulation of rule 3.299 was unreasonable. Because of this, we find the trial court did not err in ruling the Comptroller improperly assessed sales tax against Cox. We overrule the Comptroller's first three points of error.

*Tax due on materials and costs associated with publishing*

■ In point of error four, the Comptroller contends the trial court erred in denying its counterclaim for tax due on the materials and costs associated with publishing *Experience Austin*. Although the Comptroller offered no evidence at trial to support the counterclaim, the trial court specifically inquired into the taxability of the supplies and materials. Cox replied that it had and would

stipulate that the sale of the items used to publish *Experience Austin* were taxable. Cox cannot now defend on lack of evidence grounds that it owes no such tax after stipulating to that fact at trial. We sustain point of error four and hold that the Comptroller may assess tax on the materials and costs associated with publishing *Experience Austin*. However, under the Tax Code, no tax can be assessed after four years from the date the tax becomes due and payable. *See* Tex. Tax.Code Ann. § 111.201 (West 1992).

### CONCLUSION

We affirm the trial court's judgment that the Comptroller improperly assessed sales tax on the "sales price" and advertising revenues Cox received for its publication of *Experience Austin*. But because the trial court erred in denying the Comptroller's counterclaim for tax on the materials associated with publishing the magazine, we reverse that portion of the judgment and remand the cause for the trial court to determine the amount of tax owed on that basis in accordance with the statute of limitations.