BIANCO, J.T.C.
This opinion constitutes the Tax Court’s decision concerning cross-motions for summary judgment filled by plaintiff, RCN Telecom Services, Inc. f/k/a Freedom New York, LLC (hereinafter “RCN Telecom”) and defendant, Director, Division of Taxation (hereinafter the “Director”). RCN Telecom seeks a two-fold determination: (1) that it is a proper party to seek a refund pursuant to N.J.S.A 54:32B-8.13(c); and, if so (2) that it is entitled to a refund of sales taxes paid on machinery, equipment or apparatus (hereinafter “MEA”). Conversely, the Director seeks (1) a determination that RCN Telecom is ineligible to seek a refund pursuant N.J.S.A 54:32B-8.13(c); and, should the court find that RCN Telecom is a proper party to claim a refund, (2) a determination that RCN Telecom has failed to satisfy the elements of N.J.S.A. 54:32B-8.13(c) and therefore is not entitled to a refund.
For the reasons set forth in this opinion, RCN Telecom is deemed to be a proper party to seek a refund pursuant to N.J.S.A. 54:32B-8.13(e), however, genuine issues of material fact exist as to whether RCN Telecom has satisfied all the elements of N.J.S.A 54:32B-8.13(c) to be entitled to a refund. Accordingly, RCN Telecom’s motion is granted in part and denied in part and the Director’s motion is denied.
The court finds the following facts: On March 25, 2001, Freedom New York, LLC[1] (a Delaware limited liability corporation, hereinafter “Freedom”), subsequently doing business as RCN Telecom [2], claimed a sales tax refund for MEA purchased between December 1, 1998 and December 31, 1999 (hereinafter the “audit period”). On October 31, 2006, the Director issued a final determination denying the refund in part. On January 26, 2007, Freedom filed a complaint with the Tax Court challenging the denial. Both parties moved for summary judgment.
*413 During the audit period, Freedom was a wholly owned subsidiary of RCN Corporation (a Delaware corporation, hereinafter “RCN”). Freedom was also a corporate relative[3] of RCN Operating Services, Inc. (a New Jersey corporation, hereinafter “RCN Operating”), which served as a special purpose, payment agent entity for RCN, its affiliates and subsidiaries, including Freedom, to pay for vendor expenses.[4]
From 1999 to 2000 Freedom was a telecommunications service provider licensed by the Federal Communications Commission (hereinafter the “FCC”).[5] Freedom originally planned to launch a telecommunications network in Jersey City, Hoboken, and Nutley, New Jersey (hereinafter the “Project”). Pursuant to the Project, Freedom purchased real estate in Nutley and Bayonne, New Jersey and MEA[6] intended to be used directly and primarily in providing telecommunication services. All of the MEA had a useful life greater than one year. Invoices placed in evidence show that the MEA was billed and shipped to various RCN affiliates/subsidiaries and locations.[7] The invoices also reference various individuals or “hubs” in their attention lines.[8] Copies of *414 checks placed in evidence show that RCN Operating paid the vendors of the MEA. Also placed in evidence was a table summarizing the checks issued by RCN Operating and computer-screen printouts of RCN Operating’s inter-company accounting records.
Due to financial troubles in 2000, RCN and a number of its affiliates filed for Chapter 11 bankruptcy. As a result, Freedom was forced to abandon the Project at the end of 2000. Thereafter, Freedom installed and used all of the MEA in its telecommunication system in Queens, New York.

Summary Judgment

New Jersey’s Court Rules provide that summary judgment is appropriate where:
The judgment or order sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law.
[ft 4:46 — 2(c).]
The moving party sustains the burden to show no genuine issue of material fact exists. Judson v. Peoples Bank and Trust Co., 17 N.J. 67, 74, 110 A.2d 24 (1954); see also Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 916 A.2d 440 (2007). The opposing party cannot defeat the motion for summary judgment simply by pointing to any fact in dispute. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 529, 666 A.2d 146 (1995). Denial of summary judgment occurs when the opposing party brings forward evidence that creates a genuine issue for a material fact. Ibid.

N.J.S.A. 54:32B-20(a)

It has been held that “in the absence of such specific statutory authority permitting a refund, taxes erroneously, illegally or unconstitutionally collected cannot be refunded.” Great Adventure, Inc. v. Director, Division of Taxation, 9 N.J.Tax, 480, 484 (1988) (citing Continental Trailways v. Director, Division of Motor Vehicles, 102 N.J. 526, 548-50, 509 A.2d 769 (1986)). “It has been the general common-law rule that where a party, without
*415 mistake of fact, fraud, duress, or extortion, voluntarily pays money on a demand that is not enforcible [sic] against him, he may not recover it.” Continental Trailways, supra, 102 N.J. at 548, 509 A.2d 769 (citations omitted). “Public policy discourages suits for the refund of taxes erroneously paid or illegally collected.” Ibid.
N.J.S.A. 54:32B-20(a) permits applications for refund of taxes paid under the Sales and Use Tax Act (hereinafter “SUTA”), N.J.S.A. 54:32B-1 et seq. “Such application may be made by a customer who has actually paid the tax ... [or] by a person required to collect the tax....” Ibid.[9] The Tax Court has previously found that N.J.S.A. 54:32B-20(a) is “clear and unambiguous” and therefore must be applied as written. Great Adventure, Inc., supra, 9 N.J.Tax at 485. Accordingly,
under N.J.S.A. 54:32B-20(a) ... ItheJ plaintiff must establish that it is either a ‘customer who has actually paid the tax’ or is ‘a person required to collect the tax’.... There are no other eligible applicants set forth in the statute and refunds are limited to the statutory authorization.
[Ibid, (quoting N.J.S.A. 54:32B-20(a)).]
The Director argues that RCN Telecom cannot claim a refund under N.J.S.A. 54:32B-20(a) since it was RCN Operating (and not RCN Telecom) that paid the vendors. RCN Operating, according to the Director, was therefore the “customer” who has actually paid the tax on the MEA.
RCN Telecom, in turn, argues that RCN Operating merely acted as Freedom’s payment agent when it remitted checks to the vendors. Therefore, RCN Telecom, as Freedom’s successor in interest, and not RCN Operating, was the actual “customer.”
SUTA defines the term “customer” to include “every purchaser of tangible personal property or services.... ” N.J.S.A 54:32B-2(x). A “purchaser” is defined under SUTA as “[a] person who purchases property or who receives services.” N.J.S.A. 54:32B-2(c). A “purchase” is, in relevant part, defined under SUTA as “[ajny transfer of title or possession ... in any manner or by any means whatsoever for a consideration____” N.J.S.A. 54:32B-2(f).
*416 The Tax Court has previously interpreted the “transfer” requirement of N.J.S.A. 54:32B-2(f) broadly. In Diamondhead Corporation v. Director, Division of Taxation, 4 N.J.Tax 255 (1982) the taxpayer, a foreign corporation, took title, by way of a bill of sale, to an aircraft while it was a nonresident of New Jersey. Thereafter the taxpayer stored the aircraft at Newark International Airport and moved a substantial portion of its operations to New Jersey. Id. at 258-59. The Tax Court, in setting aside the Director’s determination that the taxpayer was liable for use tax, found that:
It is apparent that the Legislature, in using this language, intended to bring within the reach of the new taxing statute as many transactions as could possibly be considered sales and purchases. Since the Legislature also used the term “purchased” in the exemption provision of N.J.S.A. 54:32B — 11(2), the court must attach the same broad meaning to it there as it does for the taxation sections. As a consequence, the exemption provision must be construed as generously in favor of the person seeking the exemption as it is construed to be all-inclusive with regard to the imposition of tax.
[Id. at 260.]
Here it is undisputed that the vendors shipped the MEA to various RCN entities and locations. See APPENDIX A, infra. Accordingly, the vendors transferred possession of the MEA to an entity related to RCN Telecom. The physical transfer of possession of the MEA is consistent with the broad interpretation articulated in Diamondhead, and therefore such an exchange constitutes a transfer of possession under N.J.S.A. 54:32B-2(f).
The Supreme Court of New Jersey has previously interpreted the “for a consideration” requirement of N.J.S.A. 54:32B-2(f). In Fairlawn Shopper, Inc. v. Director, Division of Taxation, 98 N.J. 64, 484 A.2d 659 (1984), publishers of free circulation newspapers argued that sales of the newspapers from the printers to the publishers were sales for resale and therefore were exempt from sales tax pursuant to N.J.S.A. 54:32B-2(e)(l)(A). While the publishers distributed the newspapers free to the public, the publishers earned revenue from third-parties for advertising. Id. at 66-67, 484 A.2d 659.
*417 The Court looked to the definition of “sale”[10] in N.J.S.A. 54:32B~2(f) to determine whether the publishers’ purchase of the newspapers from the printers constituted a “sale for resale.” [11] Id. at 72, 484 A.2d 659. The Court noted that “the fact that the publishers distribute[d] the subject newspapers free-of-charge seem[ed] to fly in the face of a conclusion that publishers’ purchases of printing services and materials were ‘sales for resale.’ ” Ibid. However, the Court found that “[N.J.S.A 54:32B — 2(f)] requires some consideration to pass during the transfer of title or possession, although [N.J.S.A. 54:32B-2(f)] is unclear as to the source of the consideration.” Fairlawn Shopper, Inc., supra, 98 N.J. at 72, 484 A.2d 659. Accordingly, the Court agreed with the Tax Court’s conclusion that “a sale for resale is established under New Jersey law when the consideration for the resale comes from a third party other than the customer.” Ibid. “[I]n effect, the advertisers [were] subsidizing the readers of these papers to the extent of the price per copy that the publisher would otherwise charge the consumer.” Id. at 74, 484 A.2d 659 (quotations omitted). Finally, the Court held:
Although we recognize that tax exemptions are to be strictly construed against those seeking exemptions, “that principle does not justify distorting the language or legislative intent.” As this Court noted in Schierstead v. Brigantine[, 29 N.J. 220, 148 A.2d 591 (1959)] “statutes are to be read sensibly rather than literally and the controlling legislative intent is to be presumed as ‘consonant to reason and goods discretion/ ” In this case, to accept the Director’s interpretation — that no consideration passes when the newspapers are distributed to the readers — would generate an unacceptable consequence: the subject newspapers would charge their readers some nominal price for the sole purpose of receiving the “sale for resale” exemption. We cannot accept that potential risk.
Rather, we conclude that the consideration necessary to satisfy [SUTA’s] definition of a “sale” (and, by inference, a ‘resale’) can be found to have been supplied by third parties — in this case, the advertisers who finance the publication. As Judge Andrew noted, “[i]t makes no logical sense for advertisers to purchase advertising space along with no guarantee that the publications will reach the reading public. This court will not close its eyes to the economic realities of the situation.” [Ibid, (citations omitted).]
*418 Here, RCN Operating, like the advertisers who financed the publication of the free-circulation newspapers in Fairlawn, provided the consideration necessary to satisfy the definition of “purchase” under N.J.S.A. 54:32B-(2)(f). RCN Operating, a related corporate entity of RCN Telecom, rather than a third-party like the advertisers in Fairlawn, remitted checks to the vendors in exchange for the transfer of possession of the MEA. To accept the Director’s contention that only RCN Operating can claim a refund, since RCN Operating was the entity that remitted the check to the vendors, would ignore the economic realities of the situation. See Fairlawn, supra, 98 N.J. at 73-74, 484 A.2d 659 (criticizing Del Val Pennysaver, Inc. v. Director, Division of Taxation, 188 N.J.Super. 108, 114, 456 A.2d 115 (1983)). Just as the advertisers in Fairlawn, RCN Operating provided the consideration that the vendors would have otherwise expected RCN Telecom to provide.
Both parties cite UPS Oasis Supply Corp. v. Director, Division of Taxation, 23 N.J.Tax 320 (2007) as authority supporting their respective arguments. Each party’s reliance on UPS Oasis is misguided since the issue in that case was “whether, under the facts in the record, plaintiffs payment can and should be treated as a payment on behalf of General Services.” Id. at 337. The UPS Oasis court never addressed whether the plaintiff was the correct party to claim a refund. In UPS Oasis, UPS Oasis Supply Corporation (hereinafter “UPS Oasis”), a subsidiary serving as a payment agent for its parent, United Parcel Service of America, Inc. (hereinafter “UPS”), and UPS’s other affiliates, sought a refund of sales tax paid on a purchase of computer equipment by United Parcel Service General Service Co. (hereinafter “General Services”), another subsidiary of UPS. Id. at 321-22. UPS Oasis argued, in part, that it had erroneously paid the tax due to a flaw in its computer program. Id. at 329. The UPS Oasis court found, however, that:
A decision was made, either by General Services or [UPS Oasis], or both, that the [General Services — Hitachi] transaction should be placed into [UPS Oasis’s computer program] and that, in effect, [UPS Oasis] would act as payment agent for General Services with respect to the Hitachi invoice, a role [UPS Oasis] had played in connection with direct purchases of certain goods and services made by other
*419 UPS — America subsidiaries. [UPS Oasis’s] remittance of sales or use taxes, therefore, can and should, be viewed as a payment on behalf of General Services.
[Id. at 337-38 (emphasis added).]
Based on the record, the court concluded that:
The foregoing demonstrates a lack of concern by fUPS Oasis] and General Sendees as to the designation of the appropriate corporate entity as the purchaser of the Hitachi equipment. This casual intermixing of corporate names supports my finding and conclusion, that the ta,x payment by plaintiff prroperly can be treated as a, tax payment on behalf of General Services.
[Id. at 340 (emphasis added).]
Therefore, the analysis of the UPS Oasis court focused on whether UPS Oasis’s payment could be attributed to General Services, rather than addressing whether UPS Oasis was the proper party to claim a refund under the narrow definition of N.J.S.A. 54:32B-20.
Accordingly, the court finds that RCN Telecom is “a customer who has actually paid the tax” under N.J.S.A. 54:32B-20(a) since it has satisfied the statutory definition of “customer” under N.J.S.A. 54:32B-2(c), (f), (x). Therefore, RCN Telecom is a proper party to pursue a refund claim under N.J.S.A. 54:32B-8.13(c).

N.J.S.A. 54:32B-8.13(c)

RCN Telecom claims an exemption pursuant to N.J.S.A. 54:32B-8.13, which provides in relevant part:
Receipts from the following are exempt from the tax imposed under the Sales and Use Tax Act:
c. Sales of ... machinery, equipment or apparatus .. to a service provider subject to the jurisdiction of the Board of Public Utilities or the Federal Communications Commission, for use directly and primarily in receiving at destination or initiating, transmitting and switching telephone, telegraph or interactive telecommunications sendee for sale to the general public.
The exemptions granted under this section shall not be construed to apply to sales, otherwise taxable, of machinery, equipment or apparatus whose use is incidental to the activities described in subsections ... c .. of this section.
The exemptions granted in this section shall not apply to energy, motor vehicles, or to parts with a useful life of one year or less or supplies used in connection with the machinery, equipment or apparatus described in this section.
[N.J.SA. 54:32B-8.13.]
*420 “[Generally statutes granting exemptions from taxation are strongly construed against those seeking exemption, but that principle does not justify distorting the language or the legislative intent.” Boys’ Club of Clifton, Inc. v. Jefferson Township, 72 N.J. 389, 398, 371 A.2d 22 (1977). “[T]he taxpayer has the burden of proving that it satisfies all of the elements necessary for such qualification.” UPS Oasis Supply Corporation v. Director, Division of Taxation, 23 N.J.Tax 320, 334 (2007) (citations omitted).
RCN Telecom argued that it has satisfied all the elements of N.J.S.A. 54:32B-8.13(c) and therefore is entitled to summary judgment.[12] The Director, on the other hand, argued that RCN Telecom has failed to prove that it is “a service provider subject to the jurisdiction of the ... [FCC]” or that it purchased the MEA “for use directly and primarily in receiving at destination or initiating, transmitting and switching telephone, telegraph or interactive telecommunications service for sale to the general public.” N.J.S.A. 54:32B-8.13(e).
No New Jersey court has been asked to interpret the “service provider subject to the jurisdiction of the ... [FCC]” element of N.J.S.A. 54:32B-8.13(c). The New Jersey Legislature has neither defined the term “service provider” nor the phrase “subject to the jurisdiction of the ... [FCC].” See N.J.S.A 54:32B-2, -8.13. Nor does the Director offer any insight in any of her regulations. See N.J.AC. 18:24-4.2 (“Definitions”).
The statutory provision in question was added to N.J.S.A. 54:32B-8.13(e) by L. 1989, c. 2, § 1, which is entitled:
An Act concerning the taxation of certain telecommunications companies and equipment, providing for the distribution of certain State revenues, amending P.L. 1980, c. 105, P.K. 1940, c. 4 and R.S. 54:4-1, supplementing Title 54 of the Revised Statutes, and repealing R.S. 54:13-11, R.S. 54:13-12, R.S. 54:13-15 and P.L. 1952, c. 349.
A Statement by the Senate Revenue, Finance and Appropriations Committee to the bill described the bill as providing “several *421 major provisions that restructure the method of taxing the telecommunications industry in New Jersey.” Statement to A. 135, Second Reprint, by the Senate Revenue, Finance and Appropriations Committee. The Statement, however, provides no explanation for the enactment of the provision.
The Federal Communications Act of 1934, however, sets forth the jurisdiction of the FCC as:
The provisions of this Act shall apply to all interstate and foreign communication by wire or radio and all interstate and foreign transmission of energy by radio, which originates and/or is received within the United States, and to all persons engaged within the United States in such communication or such transmission of energy by radio, and to the licensing and regulating of all radio stations as hereinafter provided____ The provisions of this Act shall apply with respect to cable service, to all persons engaged within the United States in providing such service, and to the facilities of cable operators which x-elate to such seiwice, as provided in title VI [47 USCS §§ 521 et seq.l. [47 U.S.C. § 152(a).]
RCN Telecom offered (as proof that it was a service provider subject to the jurisdiction of the FCC during the audit period), a list of licenses granted by the FCC to Freedom between 1998 and 2000 and a public notice by the FCC announcing the assignment of one license, WPOP730, by Freedom to RCN Telecom. The Director argued that this evidence is insufficient to prove that RCN Telecom was a service provider subject to the jurisdiction of the FCC because it fails to show that RCN Telecom was licensed in New Jersey. While the court finds the statutory provision at issue to be vague, there is nothing in its plain language or in the legislative history to support the Director’s contention that service providers subject to the jurisdiction of the FCC must be licensed in New Jersey. The court is therefore satisfied by the proofs submitted, that RCN Telecom’s was a service provider subject to the jurisdiction of the FCC.
The Tax Court recently interpreted the “directly and primarily” element in N.J.S.A. 54:32B-8.13(c). In RCN Telecom Services v. Director, Division of Taxation, 23 N.J.Tax 520 (2007), RCN Telecom (the same plaintiff as in the present case) sought an exemption for various items of equipment under N.J.S.A. 54:32B-8.13(c) and (e).[13] Both subsections (c) and (e) required that the *422 equipment be used “directly and primarily” in some prescribed manner. N.J.S.A. 54:32B-8.13(c); (e). The court interpreted the phrase “directly and primarily” as:
[L]imiting the exemption provided by [subsections (c) and (e) ] to purchases of apparatus or equipment used only for receiving or transmitting interactive telecommunications service. Apparatus or equipment not so used, even if essential or necessary for, or integral to, the operation of a [telecommunications sendee], will not qualify for exemption.
[RCN Telecom Services, supra, 23 N.J.Tax at 524.]
“Determining whether any item qualifies for exemption, therefore, requires an analysis of the function and use of the item.... ” Id. at 523.
The juxtaposition of two particular items analyzed by the RCN Telecom Services court is useful to the present appeal. The court first analyzed the function and use of a set top box. After accepting RCN Telecom’s definition, the court found that a set top box is:
A device with a useful life greater than one year that connects to a television and some external source of signal and turns the signal into content that is displayed on the screen. A device that resides in a customer location and is used as an interface between the cable system network and the customer’s television. Set-top boxes are used to decode or decrypt encoded or encrypted video content so that the customer can view the content when authorized. Set-top boxes also allow access to video on-demand programming, allow for the implementation of parental controls and allow for the viewing of digital content on analog TV sets, among other things. [Id. at 525.]
The Director argued that set top boxes were not necessary or essential to the transmission of cable signals because subscribers can obtain basic cable service without the use of set top boxes. Ibid. While noting that “necessary or essential” is not the test under subsection (e), the RCN Telecom Services court concluded that:
[S]et top boxes, when used, are used directly and primarily in the transmission of cable television signals. Even if basic cable sendee is available without set top boxes, the boxes function only for the purpose of permitting the cable subscriber to
*423 receive video on demand, implement parental controls, or receive premium programming from the cable provider. The motion papers demonstrate no other function for the boxes. They are, therefore, used directly and primarily for the transmission of television information and qualify for exemption.

[Ibid.)

The court then analyzed the function and use of cable modems. Id. at 526. Both RCN Telecom and the Director agreed that a cable modem was:
A device, with a useful life greater than one year, that provides access to a data signal sent over the cable television infrastructure. Cable modems are primarily used to deliver broadband Internet access, taking advantage of unused bandwidth on a cable television network. A cable modem is a type of customer premise equipment that is used as a point of interface between the cable system network and the customer’s data equipment, typically a PC. Cable modems are primarily used to deliver broadband Internet access via the cable television network.
[Id. at 526-27.1
The RCN Telecom Services court denied RCN Telecom’s motion for summary judgment as to the cable modem, however, because it had failed to provide any “indication or description of the ‘non-primary’ use or uses of the modem nor has [it] described the relative extent of the primary use and the secondary use or uses.” Id. at 527. Instead, the court found that “whether [RCN Telecom’s] use of the cable modem satisfies the statutory standard for exemption [could not] be determined based on the motion papers” and that “a genuine issue of material fact exist[ed] with respect to the function and use of the cable modems.” Ibid.
In the present case, Anthony Ontiveros, Vice President of RCN Telecom, certified that “Freedom purchased the [MEA] for use directly and primarily in receiving at destination or initiating, transmitting and switching telephone and interactive telecommunications services for sale to the general public through the Jersey City Telecommunications Network.” RCN Telecom also submitted purchase invoices of the MEA, but only the invoices issued by ADC Telecommunications, Inc. provided a description of the item’s function or use.
Neither Mr. Ontiveros’s certification nor the invoices provides an indication or description of the primary use of each piece of MEA purchased by RCN Telecom. The description provided by Mr. Ontiveros pales in comparison to the descriptions found in *424 RCN Telecom, Services for the set top box and the cable modem, the latter of which was found to be insufficient to determine the item’s primary function or use. Id. at 525-27. Moreover, none of the invoices provide a description of the item’s primary function and use. The only description of an item’s use in evidence is a brochure by ADC Telecommunications, Inc., advertising the DS3 Fiber Loop Converter. According to the brochure “[t]he DS3 FLC supports the transmission of SMDS service through the network[,]” “[t]he DS3 FLC can be utilized cost-effectively for transport of these services through the public network[,]” and “[t]he DS3 FLC provides high quality video signal transmission that is the most cost-effective solution for DS3 video transport.” The brochure, however, fails to provide any “indication or description of the non-primary use or uses of the [MEA,] nor has [it] described the relative extent of the primary use and secondary use or uses.” Id. at 527.
Like the proofs offered in RCN Telecom, the proofs offered here lack any indication or description of the non-primary use or uses of the MEA purchased by RCN Telecom; nor do the proofs describe the relative extent of the primary use and the secondary use or uses of the MEA. See id. at 527. Accordingly, the court is unable to determine on summary judgment whether the MEA purchased by RCN Telecom is entitled to an exemption.

Conclusion

To be eligible for a refund under N.J.S.A. 54:32B-20(a) the claimant must be a “customer who actually paid the tax.” To qualify as a “customer,” the claimant must be a “purchaser” who is “[a] person who purchases property or who receives services.” N.J.S.A. 54:32B-2(c). A purchase is, in relevant part, “[a]ny transfer of title or possession ... in any manner or by any means whatsoever for a consideration.... ” N.J.S.A. 54:32B-2(f). Both the Supreme Court of New Jersey and the Tax Court have interpreted the definition of “purchase” broadly. See Fairlawn, supra, 98 N.J. at 72, 484 A.2d 659; Diamondhead, supra, 4 N.J.Tax at 260. Here a “purchase” occurred when the vendors transferred possession of the MEA to RCN Telecom or a related corporate entity and the vendors were paid by RCN Operating, an *425 RCN Telecom related corporate entity. As a result, the court finds that RCN Telecom is a “customer” for the purposes of N.J.S.A. 54:32B-20(a) and may claim a refund.
In order to be exempt from sales tax under N.J.S.A. 54:32B-8.13(c) there must be a sale of MEA to a “service provider subject to the jurisdiction of the ... [FCC], for use directly and primarily in receiving at destination or initiating, transmitting and switching telephone, telegraph or interactive telecommunications service for sale to the general public.” Here RCN Telecom has offered undisputed evidence that it was a service provider subject to the jurisdiction of the FCC. The court finds, however, that there is a genuine issue of material fact as to the primary function or use of the MEA which will require a hearing and offering of evidence. Accordingly, RCN Telecom’s motion is granted in part, and denied in part. The Director’s motion is denied.
APPENDIX A APPENDIX A — Continued

Vendor

ADC Telecommunications, Inc

Purchased Item

2x2 Extrusion Yellow w/more openings;
4” Downspout;
4" & 6" Downspout Cover;
4" End Cap Kit;
4" Horizontal T;
4" HZ STRHT SECTION 6' Long;
T IMP 4" GDBX 14" TRGII;
7i Universal FR CA MGMT;
Assy Fee 864 Integrated Drawer; CHAS DS3 RX 0/24POS 6X23 PW CHAS VAM IFC 12 POS EMT 8X23 PW;
Cover 1 Hose Adapter Kit;
Cover for 2x2 Vertical Duct 6';
Cover Kit for 4" HZ T;
Crating Cardboard FDF;
DS# MOD MID/BNC RX BANDC; Elbow, 4in, 90Deg, Horz, Yellow Elbow, 4in, 90Deg, Horz, Blk End Guard 12"X7' Putty;
FCM W/IFC Configure to Order FDF, 7', Universal FR CA MGMT; FDF 8 Inch Blank Panel;
FGS 10 PSC JUNC KIT 4X4;
Holder INTG SPLC CHIP HS;
Holder INTG SPLC CHIP MF;
*426 APPENDIX A — Continued
Holder INTG SPLC CHIP MT; JUNCTION ASSEMBLY, 4", 25PCS;
Kit, 5/8" NEW THRD ROD MTG;
Kit, FBR TRGH 19" TOP;
KIT FGS CVR HINGED 4" YEL;
Kit Clamp FEC 3 INCL;
Ladder Rack Bracket Kit 5/8”
MOD IFC72/72 SMAPSC;
MOD IFC 96/72 SMSC 1-72 FBR Mod Ifc 96/96 SMAPSC;
MOD VAM SPLTR FF 1*2(2) 50/50, FDF;
MOD VAM WDM FF BIDIR (2);
Panel FDF 8" Blank;;
Panel, 7ft X 5in Interbay;
PNL DS1 FX 84CKT WW-WW PW 1-28;
VAM BIDIR WDM Type G;
VAM SPLTR FF 1x3; and
VAM SPLITR FF1X3 33/33/33SMASC
Cableware Systems
Ant PA2-190;
Ant PA4-190;
Ant PA4-190; and Ant PA6-190
Power & Telephone Supply
50-870 MHZ Receiver
Analog Link;
Analog DFB TX 8 DB Link Full; Analog DFB TX 5 DB Link Full; Analog DFB TX 6 DB Link Full; Analog DFB TX 7 DB Link Full; Analog DFB TX 9 DB Link Full; Analog DFB TX 11 DB Link Full; Analog DFB TX 12 DB Link Full; Analog DFB TX 13 DB Link Full; Analog DFB TX 14 DB Link Full; Analog Link Full;
DUAL, Ret. RX5-200MHZ;
EMOD, 5-25;
50-870MHZ RF Switch;
Power Supply;
Adaptor Data;
Return Chassis;
Supply Power;
FWD Chassie;
PWL IISERIES TX Module Adapted; Net;
Controller; and Demod, 5-25
Millennium Communications Group Inc
Assembly of Earth Stations
*427 APPENDIX B

Vendor Billing Address Shipping Address

ADC RCN RCN
Telecommunications, 105 Carnegie Center 50 Tanery Road Unit 4,
Inc. Princeton, NJ 08540 Branchburg Township-
Somerset NJ 08876
RFS Cablewave RCN Inc. National Microwave Contractor
Systems 105 Carnegie Center, 221 Hudson Street,
Princeton, NJ 08540 Hackensack, NJ 07601
Power & Telephone RCN-Becocom LLC. RCN
Supply 105 Carnegie Center, 50 Tanery Road Unit 4,
Princeton, NJ 08540 Somerville, NJ 08876
Lucent RCN Operating Service RCN Operating Service
Technologies, 105 Carnegie Center, 105 Carnegie Center,
Inc. Princeton, NJ 08540 Princeton, NJ 08540

 Located at 105 Carnegie Center, Princeton NJ 08540.

 In 2000, Freedom merged with RCN Telecom, resulting in one entity known as RCN Telecom. The events giving rise to this appeal occurred prior to the merger.

 According to RCN's 10-K405 for 12/31/99 EX-21, filed with the Securities and Exchange Commission, of which the court takes judicial notice, RCN Telecom and RCN Operating were also wholly owned subsidiaries of RCN.

 The Director disputes this fact, but has failed to bring forth any evidence to the contrary. Instead the Director relies on the fact that RCN Telecom failed to produce any inter-company agreements between RCN Telecom and RCN Operating. The court finds this factual dispute to be immaterial.

 The Director disputed this fact as unsubstantiated as required by R. 4:46-2. The court is satisfied that Freedom was subject to the jurisdiction of the FCC.

 According to invoices in evidence, RCN Telecom purchased MEA from various vendors set forth in APPENDIX A to this opinion.

 According to invoices in evidence, the vendors billed and shipped the addresses shown in APPENDIX B.

 For example, invoice RCN Telecom 0103 is addressed to “Attn: Steve O'Dell, NYC Hub,” while invoice RCN Telecom 1017 is addressed to “Attn: Elmburst Hub."

 Several other conditions, not relevant here, must also be met in order to claim a refund.

 The fact that Fairlawn Shopper dealt with the term “sale” does not render the Court's reasoning inapplicable here since N.J.S.A. 54:32B-2(f) subscribes the same meaning to the terms “sale” and “purchase.”

 The term "resale” is not defined by SUTA. See N.J.S.A. 54:32B-2.

 In its briefs and at oral argument RCN Telecom withdrew its claim as to the following equipment: kits; clamps; crating cardboard; elbows; end guards; putty; chassis; down-spouts and other covers; panels; and power supply.

 N.J.S.A. 54:32B-8.13(e) reads in relevant part, *422 [s]ales of machinery, apparatus or equipment ... which have a useful life exceeding one year ... to a provider of cable/satellite television program services ... for use or consumption directly and primarily in the ... transmission of radio or television information transmitted, delivered or archived through any medium or method.